IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1881.

## Girard Life Insurance, Annuity and Trust Company, Administrator of Edward Magarge, deceased, to use, &c., *versus* Mutual Life Insurance Company of New York.

1. Where an insurance company issues two policies of insurance upon the life of the same person, both calling for the same mode of proof of death, and, upon the decease of the insured, the company accepts without objection proofs of death under one policy, the representatives of the insured are not bound, in the absence of a special contract to that effect, to furnish further proofs of loss under the second policy.

2. Where proofs of death furnished to the company are defective or not in conformity with the policy, it is the duty of the insurers if they mean to take advantage of this defect to apprise the insured of the fact, so as to give them an opportunity to supply the defect. If the insurers fail to do this, they will be deemed to have waived all irregularity in the proofs.

3. Where an insurance company has, prior to the death of the insured, declared the policy forfeited for non-payment of premium, the representatives of the insured are not bound, in an action brought upon the policy subsequent to his death, to show that proofs of death have been furnished in compliance with the terms of the policy.

4. Where a mutual life insurance company has in its possession dividends belonging to a policy-holder more than sufficient to pay an accruing premium when it falls due, the company has the right and is bound, if the premium is not paid, to make such an appropriation, and cannot declare the policy forfeited for failure to pay the premium in question. Especially is this so where the insured had been in the habit of applying his dividends to the payment of premiums.

(15)

[Girard Life Ins. Co. *v.* Mutual Life Ins. Co.]

5. Where a life insurance company, in an action on a' policy, defends on the ground that the premium has not been paid when due, evidence is admissible on behalf of the plaintiff to show the previous course of dealing between himself and the company as to the payment of overdue premiums.

6. A stipulation in an obscure part of a policy of insurance, printed in small type, to the effect that receipts of overdue premiums were to be deemed to form no precedent as regards the payment of future premiums, nor to be considered as a waiver of the forfeiture of the policy, is not to be regarded as a condition of said policy, but rather as a qualification of the receipt of premiums.

7. Where it did not appear at what time such stipulation had been inserted in the policy, but it was proved that overdue premiums had been received thereon, and the company had failed upon two former trials of the cause, and one argument on error in the Supreme Court, to call attention to the fact of its existence, *Held,* that upon a third trial the company could not set it up as ground of defence.

8. Where an insurance company in an action on a policy defend on the ground of failure to pay the premiums when due, testimony for the plaintiff to show that the company has been in the habit of notifying the insured when the premiums were due by him, but had in the particular instance complained of failed to do so, is inadmissible in evidence, unless it be shown that the notice has been purposely omitted with the design of forfeiting the policy.

9. In such case evidence is admissible on behalf of the plaintiff to show a custom or usage among insurance companies to receive premiums within a reasonable time after they fall due, under policies similar to that in suit, if the insured be in good health, notwithstanding the policies contain a clause of forfeiture for non-payment of premiums on the very day they are due.

January 4th 1881. (Re-argument.) Before SHARSWOOD, C. J., MERCUR, PAXSON, TRUNKEY and STERRETT, JJ. GORDON and GREEN, JJ., did not sit, being insured in the company defendant.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1880, No. 138.

Assumpsit, by the Girard Life Insurance, Annuity and Trust Company of Philadelphia, administrators of Edward Magarge, deceased, to the use of Sarah R. Magarge, against the Mutual Life Insurance Company of New York, upon a policy of life insurance issued by the company defendant upon the life of the said Edward Magarge, deceased, for $10,000.

Pleas, non assumpsit, payment, and set off, with leave, &c. Replication, non solvit, no set off, and issue.

The defendant company had issued another policy upon the life of the said Edward Magarge for $5000, which was paid by the company shortly after the death of Magarge.

The policy in suit was dated April 14th 1873, No. 28,375, and stipulated for quarterly premiums of $51 each, to be paid on or before the fourteenth days of January, April, July and October. Among other conditions contained in the body of the policy was the following: " Second, If the said premiums shall not be paid on or before the days above-mentioned for the payment thereof, at

[Girard Life Ins. Co. *v.* Mutual Life Ins. Co.]

the office of the company, in the city of New York (unless otherwise expressly agreed in writing), or to agents when they produce receipts signed by the president or secretary, then, in every such case, the company shall not be liable for the payment of the sum assured, or any part thereof, and this policy shall cease and determine."

"It is also agreed, that in every case when this policy shall cease and determine, or become, or be null and void, all payments thereon shall be forfeited to this company." The body of the policy was printed, written and signed, in the usual manner, on the first page of a full sheet of paper. Upon the two inside pages was a blank form, ruled in columns, intended for entries of the receipt of premiums (but which was not so used). At the head of this form, and running across the top of both inside pages, was printed in small type, occupying two lines, the following: "Receipts heretofore by the company, of premiums after the day on which they fell due, were by the assured and the company considered acts of grace or courtesy, and as forming no precedent in regard to future payments of premiums on the policy; and all future receipts by the company considered acts of grace or courtesy, and as forming no precedent in regard to future payments of premiums on the policy, and all future receipts by the company of premiums after due are received and understood by the parties in interest as acts of courtesy of the company, and in no case to be considered a precedent or a waiver of the forfeiture of the policy according to the condition expressed therein, if any future payment of premium be omitted on the day it falls due."

On October 20th 1864, Edward Magarge assigned the said policy to his wife, Sarah R. Magarge.

Magarge paid the quarterly premiums on said policy from its date to October 14th 1870. The receipts given by the company contained the following:—

"NOTICE TO POLICY HOLDERS."

"The agreement is mutual (see application and policy), that unless the premium is paid on or before the day it becomes due the policy is forfeited and void. Agents are not authorized to make, alter or discharge contracts, or waive forfeitures. Payments of premiums to agents are not valid unless receipts be given, signed by the president, secretary, cashier or actuary. When receipts are sent to agents for delivery, such agents shall countersign the same, as evidence of payment to them. All premiums are due and payable at the office in New York. For the convenience of the assured, they may be made to an agent, but only upon the production of the receipt above specified."

Magarge omitted to pay the quarterly premium due January 14th 1871, on that day (Saturday). He tendered the amount on

1 OUTERBRIDGE—2

the following Monday, January 16th, but the company refused to receive it, and declared the policy cancelled and forfeited. He, thereupon, filed a bill in equity to enjoin the company from forfeiting the policy, and pending a reference of that cause to a master, Magarge died, of heart disease, February 21st 1872. After his death this suit was brought.

The case was originally tried September 20th 1875, when the court granted a nonsuit, which the court in banc refused to take off. Upon writ of error to this court, the judgment was reversed and a *procedendo* awarded. (See 5 Norris 236.)

The case was again tried, October 30th 1878, and a verdict was rendered for the plaintiff for $14,358.50. The court below granted a new trial, on the ground of error in the admission of testimony, and the case was again tried, November 25th 1879, before FINLETTER, J.

The plaintiff, after giving the policy in evidence, called upon the defendant, in pursuance of a notice and a subpœna *duces tecum*, to produce the proofs of death which had been filed with the company soon after Mr. Magarge's death. These proofs had been made out upon forms furnished by the company, under the oaths of the physician, a friend of the deceased, and the undertaker, and had been accepted by the company as sufficient at the time of the payment of the $5000 policy above mentioned. Defendant's counsel replied, "There are no proofs of death under the policy in suit." Plaintiff thereupon offered to prove that the proofs of death theretofore filed with the defendant company were in accordance with the requirements of the policy now in suit; that these proofs of death were intended for this policy, as well as for the other, and that they are in the possession or control of defendants; the plaintiff also offered in evidence copies of said proofs of death. Objected to; objection sustained and offers overruled, "unless it be shown that the proofs were furnished under the special policy in suit," and "because the copy offered itself shows that it referred to another policy." Exception. (Assignments of error, 1 to 6 and 17 to 19, inclusive.)

The plaintiff called Henry E. Rees, who had been Magarge's bookkeeper, and made the following offers of testimony, viz.: That it had been the custom of the company to send notices of the falling due of premiums, which the witness always opened and took charge of, but that he received no notice of the falling due of the premium due January 14th 1871. Objected to; objection sustained. Exception. (10th assignment of error.) That the premium due January 14th was tendered January 16th, and declined. That upon previous occasions in 1867 and in 1870, the premiums had been tendered and accepted a few days after they fell due. Objected to; objection sustained. Exception. (7th and 8th assignments.)

[Girard Life Ins. Co. *v.* Mutual Life Ins. Co.]

Plaintiff offered to prove that it was the custom among life insurance companies doing business in Philadelphia to receive premiums within a reasonable time after they fall due, under policies similar to the one in suit, if the assured be in good health, notwithstanding the policies contain a clause of forfeiture for non-payment on the very day. Objected to; objection sustained, unless it be shown that the offer applies to all companies doing business under the particular form of the policy in suit. The witness having answered that the policy is similar in general form and sense to other policies containing forfeiture clauses, with the exception of the two lines printed at the head of the inside pages, and that he did not know any other company having a policy *exactly* like the one in suit, the plaintiff's offer was overruled. (Assignments 11 to 16.)

The plaintiff further offered to prove, by William N. Lambert, of the firm of Vanuxem, Bates & Lambert, the general agents for the defendant company in the State of Pennsylvania, "that upon January 1st 1871, the surplus for defendant company for the year 1870 was divided among the policy-holders of the company, and that this policy now in suit was then entitled to the sum of $67.72, which appears by the books produced by the witness to the credit of that policy; and that the previous divisions of surplus or annual dividends due to this policy were more than the quarterly premiums due in January of each year; also to show how Magarge was in the habit of using those dividends in the payment of his premiums; also to show that $67.72 dividend appears upon the company's books upon this policy, and has never been paid to Edward Magarge, or to his administrators, or to any one for them."

Objected to; objection sustained. Exception. (20th assignment of error.)

The plaintiffs offered in evidence a book issued and published by defendant company, produced by their agent, William N. Lambert, called "Mutual Life Rates," for the purpose of showing, that the surplus belonging to defendant company is to be equally distributed each year among the different policies of said company, and that the same can be used in payment of premiums.

Objected to; objection sustained. Exception. (22d assignment of error.)

The plaintiff further offered to show, that at the time of the refusal of the premium of January 14th 1871, on January 16th, and previously thereto, Magarge was in good health; that Judge Elcock (witness) was his then counsel and in daily communication with him; and as counsel, applied to court for an injunction to restrain the company from forfeiting this policy; and that while the case was being argued before a master, Magarge died in February 1872.

Offer overruled, unless it be shown that the condition of Magarge's health was made known to the company.

At the close of the plaintiff's case, the court, on motion of the defendant, granted a nonsuit, which the court in banc subsequently refused to take off. The plaintiff took this writ of error, assigning for error, the overruling of the plaintiff's offers of testimony, the entry of judgment of nonsuit, and the refusal to take it off.

The case was argued February 24th 1880, and the court ordered a re-argument, which was now had, January 4th 1881.

*John J. Ridgway* (with whom was *Daniel Dougherty*) for the plaintiff in error.—The principal questions raised on this writ of error, were decided in our favor by this court on the former writ of error : Magarge's Adm'r *v.* Ins. Co., 5 Norris 236.

The death of Magarge, which was the condition on which the company became liable under the policy in suit, was proved once for all, to the satisfaction of the company ; and the proofs of death, which were in the possession of the company, or the copies thereof, should have been admitted in evidence in this case : Walsh *v.* Marine Ins. Co., 32 N. Y. 427 ; Mason *v.* Harvey, 8 Exch. 819 ; Insurance Co. *v.* Tyler, 16 Wend. 385 ; Cornell *v.* Leroy, 9 Id. 163 ; Taylor *v.* Ins. Co., 13 Gray 434 ; Miller *v.* Ins. Co., 2 E. D. Smith 268 ; Bliss on Life Ins., sect. 264.

But the action of the company, in declaring the policy forfeited on other grounds, was a waiver of the proofs of death, as a prerequisite to suit: Insurance Co. *v.* Taylor, 23 P. F. Smith 342 ; Insurance Co. *v.* Todd, 2 Norris 272 ; 6 W. N. C. 498 ; McMasters *v.* Fire Ins. Co., 25 Wend. 379 ; Rogers *v.* Ins. Co., 6 Paige 583 ; Lewis *v.* Fire Ins. Co., 52 Me. 492 ; Miller *v.* Life Ins. Co., 2 E. D. Smith 268 ; Vos *v.* Robinson, 9 Johns. 192 ; Savage *v.* Ins. Co., 4 Bosw. 1 ; Blake *v.* Fire Ins. Co., 12 Gray 265 ; Bumstead *v.* Fire Ins. Co., 2 Kern. 81 ; Tayloe *v.* Fire Ins. Co., 9 How. 390 ; O'Niel *v.* Fire Ins. Co., 3 Comst. 122 ; Francis *v.* Fire Ins. Co., 1 Dutch. 78 ; Schenck *v.* Fire Ins. Co., 4 Zab. 447 ; Fire Ins. Co. *v.* Coates, 14 Md. 285 ; Angell on Fire and Life Ins., sect. 244 ; Francis *v.* Fire Ins. Co., 6 Cow. (N. Y.) 404 ; Insurance Co. *v.* Stein, 5 Bush 652 ; Insurance Co. *v.* Harmer, 2 Ohio St. 452 ; Transportation Co. *v.* Fire Ins. Co., 6 Blatch. C. C. 241 ; Noyes *v.* Ins. Co., 30 Vt. 659.

The evidence offered to show the previous course of dealings between the defendant and the insured, with reference to the payment and acceptance of premiums within a reasonable time after they fell due, should have been admitted : Helme *v.* Ins. Co., 11 P. F. Smith 107 ; Magarge's Adm'r *v.* Ins. Co., 5 Norris 236.

The memorandum printed across the inside pages, was not referred to in the body of the policy, and, therefore, was not a condition of the policy, and was no ground for the exclusion of such

[Girard Life Ins. Co. v. Mutual Life Ins. Co.]

evidence: Kingsley v. Ins. Co., 8 Cush. 393 ; Brittain v. Barnaby, 21 How. 536. Yet it is chiefly upon these two lines, that the nonsuit was entered.

The court erred in excluding the evidence of custom by life insurance companies, doing business under policies similar to the one in suit, to receive premiums within a reasonable time after they fall due, if the assured be in good health : Helme v. Ins. Co., *supra ;* Magarge's Admr. v. Ins. Co., *supra.*

The evidence to show that the company held dividends to the credit of the policy, in excess of the premium at the time it fell due, should have been admitted. Equity will not enforce a forfeiture under such circumstances : Hull v. Ins. Co., 39 Wis. 397 ; Russum v. Ins. Co., 5 Big. 243 ; Ohde v. Ins. Co., 5 Id. 145.

*Henry J. McCarthy* and *William A. Porter*, for the defendant in error.—The case as now presented, differs materially from that presented on the former writ of error. The condition printed on the second and third pages of the policy, was omitted from the copy of the policy printed in the paper book of the plaintiff in error, in the former case. Nor was it called to the attention of the court below on the former trials. But that is no reason why it should not now have its full effect. Conditions printed on the back of the policy, though unsigned, form part of its terms : Kensington Bank v. Yerkes, 5 Norris 227 ; Fire Association v. Williamson, 2 Casey 196 ; Desilver v. Ins. Co., 2 Wright 130 ; Trask v. Ins. Co., 5 Casey 198 ; Ins. Co. v. Ruse, 8 Ga. 534 ; Bliss on Ins. 14, sect. 399.

The evidence relating to custom was insufficient, and was properly excluded : Burger v. Ins. Co., 21 P. F. Smith 421 ; Adams v. Ins. Co., 26 Id. 411. It was not the duty of the company to appropriate dividends to the payment of premiums, without express authority from the assured. When Magarge did tender the premium, and it was refused, he made no claim that the dividend had paid the premium or that it should be so applied. The book of " mutual rates " was clearly not admissible : Ruse v. Mutual Ins. Co., 23 N. Y. 516.

Mr. Justice Paxson delivered the opinion of the court, January 24th 1881.

This record presents some questions which were not considered, when the cause was here upon a former writ of error (see 5 Norris 236). The assignments are too numerous to be discussed in detail, without extending this opinion to an unreasonable length. I will endeavor, as briefly as is consistent with the importance of the case, to indicate the principles upon which it should be ruled.

The first question relates to the proofs of death furnished the defendant. It is necessary to a proper understanding of this

matter, that the facts, as they occurred at the trial, should be stated.    The defendant was a foreign corporation, having its principal place of business in the city of New York.    It had a branch office in the city of Philadelphia, and an agent there.    It had issued two policies upon the life of Edward Magarge, deceased, one of them No. 73,712 for the sum of $5000, the other No. 28,375 for $10,000.    The former policy was paid soon after Mr. Magarge's death ; payment of the latter was resisted, and forms the subject of the present contention.    The defence was the non-payment of the premium on the day it became due.    The facts are, that a quarterly premium of $51 fell due upon January 14th 1871, which was neither paid nor tendered on that day ; that on the 16th of the same month, the full amount of said premium was tendered in cash, refused by the company, and the policy declared forfeited.

Upon the trial in the court below, the plaintiff, after giving in evidence the policy in suit, called upon defendant's counsel to produce the "notice and proofs of death of Edward Magarge given to defendant and filed in defendant's office."    To this call defendant's counsel replied, "there are no proofs of death under this policy." The plaintiff then called William N. Lambert, agent of the defendant, who admitted that a subpœna *duces tecum* had been served upon him, to produce the books and papers relating to this case ; that he informed the person who served the subpœna, that he would produce the papers ; that the proofs of death had been furnished under policy No. 73,712, which had been paid, that the proofs were filed by us (the agents), in the office of the company in New York, and were brought on here for the trial of this case ; that the witness did not know where the proofs were, but supposed them to be in the hands of the counsel of the company.    The plaintiff then called the defendant's counsel to the stand, and the result of his somewhat extended examination, may be embodied in a single question and answer.

"Question. Have you in your possession, proofs of the death of Edward Magarge, that were filed with the defendant company ?

"Answer. I have not in my actual possession, nor had I when the subpœna was served upon me within a few minutes, any proofs of death of Edward Magarge ; and I never have had in my possession any proofs of the death of Edward Magarge, which purported to relate to the policy now in suit."

Some other questions were then asked of the counsel, a portion of which it would have been in better taste to have omitted, and then we have this inquiry : "Where are those papers and those proofs of death you had at the last trial ?"    This question was objected to, and, according to the bill of exceptions, remained unanswered.    The plaintiff then called John J. Ridgway, Jr., whose testimony is so important that I give it *in extenso*.

"I knew Edward Magarge.    I knew of his death on the 21st of

February 1872. I called at the company's office, and informed them of Magarge's death. They gave me three blanks to have filled up and sworn to by a friend of Magarge's, the doctor who attended him in his last illness, and the undertaker who buried him. I either filled them up or caused them to be filled up, but they were filled up and returned in proper form to the company, sworn to by the parties as directed.

" Question. Did you ever obtain the original proofs of death from Judge Porter?

" Answer. I did, and had a copy made of them. I can swear that those (witness here points to the papers) are true copies, made by Mr. McAdam, who is in my office, and compared by me, of the proofs of death of Edward Magarge, furnished to defendant. There have been some papers attached."

I quote further from the bill of exceptions.

" Copy of proofs of death of Edward Magarge offered in evidence as identified by witness (marked Exhibit A). Objected to. Objection sustained, because the paper itself shows that it referred to another policy. Exception to plaintiff.

" Plaintiff now offers in evidence, the identified copies containing statements of doctor, friend and undertaker, all certified under oath, being copies of the proofs of death of Edward Magarge, sworn to by doctor March 6th 1872, by the friend on March 9th 1872, and the undertaker's statement sworn to February 29th 1872. Papers Nos. 1, 2 and 3 of Exhibit A. Offer overruled, unless it be shown they were furnished under the special policy in suit. Exception to plaintiff."

It will be observed, the court below placed the exclusion of this evidence upon the sole ground that the proofs were not furnished under the policy in suit.

No evidence appears to have been offered upon this point. Mr. Ridgway, who furnished the proofs, does not say under which policy they were made. There is nothing upon the face of the papers, copies of which are printed in the paper-book, to indicate under which policy the proofs were furnished, except a reference in the "friend's statement" to the number and amount of the policy which the company paid, and an indorsement, evidently by an officer of the company, of the number (73,712) on the back of the papers.

It appears to have been assumed by the company and the court below, that it was necessary for the plaintiff to have made separate proofs of death under the policy in suit, notwithstanding the admitted fact, that such proofs had been furnished, which the company had accepted, and under which it had paid the $5000 policy.

It is undoubtedly competent for a company to contract with the assured, that, in case they issue more than one policy on his life, separate proofs shall be furnished under each policy in case of his

[Girard Life Ins. Co. *v.* Mutual Life Ins. Co.]

death. There was no such contract here. The policy provides for the payment of the sum thereby insured, "in sixty days after due notice and proof of the death of the said Edward Magarge." Upon the death of the assured, the company were entitled to notice and due proof thereof. The plaintiff having once made such proof, there was no object in proving it again, and the company had no right to demand second proofs. The assured was dead, not under one policy, but under both; the fact had been communicated to the company, with the cause of death, and all the circumstances connected therewith they desired to know, and as to which it was important they should be informed. A demand that all this should be repeated, merely because two policies had been issued upon Mr. Magarge's life, is as unreasonable as it is foreign to the contract between the parties.

Had the different policies called for different modes of proof, there would have been more force in the demand for proofs under each policy. Such is not the case, however, and if it were, it was too late for the company to insist upon this point. Mr. Magarge had been dead for years: the case had been tried three times before in the court below, and once here. Upon the previous trials, these same proofs of death had been produced by the company, and used without objection. If for any reason the proofs were defective, or were not in conformity with the policy in suit, it was the duty of the company to have so notified the plaintiff. The rule in this respect was accurately laid down by Chancellor WALWORTH in Ætna Fire Ins. Co. *v.* Tyler, 16 Wend. 385: " Good faith on the part of the underwriters requires that, if they mean to insist upon a mere formal defect of this kind in the preliminary proofs, they should apprise the assured that they consider them defective in that particular, or put their refusal to pay upon that ground, as well as others, so as to give him an opportunity to supply the defect before it could be too late; and if they neglect to do so, their silence should be held a waiver of such defect in the preliminary proofs, so that the same shall be considered as having been duly made according to the conditions of the policy." To the same effect are Ins. Co. *v.* Schreffler, 6 Wright 188; McMasters *v.* Ins. Co., 25 Wend. 379; 16 Id. 385; Ins. Co. *v.* Lawrence, 10 Peters 507; Rogers *v.* Ins. Co., 6 Paige 583; Lewis *v.* Ins. Co., 52 Me. 492; Miller *v.* Ins. Co., 2 E. D. Smith 268; Savage *v.* Ins. Co., 4 Bosw. 1; Blake *v.* Ins. Co., 12 Gray 265; Noyes *v.* Ins. Co., 30 Vt. 659; Transportation Co. *v.* Ins. Co., 6 Blatch. C. C. 241; Francis *v.* Ins. Co., 6 Cowen 404; Angell on Fire and Life Ins. sect. 244; O'Neil *v.* Ins. Co., 3 Comst. 122; Francis *v.* Ins. Co., 1 Dutch. 78; Schenck *v.* Ins. Co., 4 Zabriskie 447; Vos *v.* Robinson, 9 Johns. 192.

Aside from this, the proofs referred to were not essential. The plaintiffs had proved the death of Mr. Magarge. Further, they

[Girard Life Ins. Co. v. Mutual Life Ins. Co.]

were not bound to go. The defendant company denied all liability under the policy. They had declared it forfeited months before the death of the assured. Their position was, that as to the assured there was no policy. It was precisely as if they had denied ever having issued one. How then could they call upon the representatives of the assured, to furnish proofs of death " under the policy ?" It was held, in the Franklin Fire Ins. Co. of Philadelphia v. Coates, 14 Md. 285, that " the refusal of an insurance company to pay the amount of the loss, upon the ground that they were not upon the risk, is a waiver of the preliminary proofs required by the policy." The same doctrine was held by the Supreme Court of Missouri, in McComas v. The Ins. Co., 56 Mo. 573, where it was ruled that, " In a suit on a policy of life insurance, where the company in its defence denied all responsibility, and refused to pay anything, such defence amounts to a waiver of notice and proofs of death; and where such defence is interposed to a suit on a policy, which requires the insurance to be paid within sixty days after notice and proof of loss, the same will be held due at that period after his death." We regard this as settled law.

Another important question is, the right of the company to forfeit the policy. This is raised by the 20th assignment, and as it underlies some of the other points involved, I will consider it out of its order.

The plaintiff offered to prove, " that upon January 1st 1871, the surplus of defendant company for the year 1870 was divided among the policy holders of the company, and that this policy now in suit was then entitled to the sum of $67.72, which appears by the books, produced by the witness, to the credit of that policy; and that the previous divisions of surplus or annual dividends due to this policy, were more than the quarterly premiums due in January of each year; also to show, how Magarge was in the habit of using those dividends in payment of his premiums."

As before stated, a quarterly premium fell due January 14th 1871. It was tendered on the 16th, and refused, whereupon the company declared the policy forfeited by reason of its non-payment. Had the company a right so to declare ? In considering this point, I throw out of the case all question of the right of the assured to pay within a reasonable time after the maturity of the premium, by reason of the previous course of dealing with him by the company.

This is a matter of exceeding importance to life insurance, in its bearing upon the rights of each of the contracting parties. The consideration of such contracts is, the payment of premiums by the assured, annually or otherwise, as may be agreed upon. Without it, the company would not have the means or the power to indemnify the family of the assured in case of his death. It is a contract that calls for the exercise of the highest good faith on both

sides.    The assured pays his money for indemnity in case of death. The company agrees to indemnify, in case the premiums are paid as stipulated in the policy.    It will readily be seen, that time is of the essence of such a contract.    It is entirely competent for the parties to stipulate that, in case the payments are not made on the days and times agreed upon, the policy shall be forfeited, nor has the assured, who neglects to pay, a right to complain if the terms of the policy are enforced against him.    The law, however, does not favor forfeitures ; it never enforces them cheerfully, and will decline to enforce them where they are against equity and good conscience.    Was it conscionable for the defendant company to forfeit this policy, when it had in its hands more than enough of the assured's money to pay the quarterly premium due on the 14th of January ?

To state the proposition most favorably to the company : suppose the assured on the 14th of January had been mortally ill, and for that reason had not paid his premium, and instead of tendering it on the 16th had died upon that day.    Would a chancellor have permitted a forfeiture of the policy, if it appeared the company had more than enough of the assured's money in its possession to have paid the premium ?    What is the ground of the forfeiture?    It is, that the assured, by withholding from the company the money which he agreed to pay, prevents the latter from performing its contract of indemnity with others.    It is therefore just that it should not perform it with the defaulting assured.    If, however, the company has in its possession money of the assured sufficient to cover the default, and which it has the right to apply thereto, it has the means to keep its covenants with others, and why not keep them with the assured?    This brings us to the question, had the company the right to apply the surplus belonging to Mr. Magarge to the payment of the premium which became due on January 14th ?    If it had such right, equity will compel such application to prevent the forfeiture.    Upon this point we have not been furnished with much information by the paper-books, and must take the record as we find it.    The evidence referred to in the 22d assignment would have given us some light upon this subject, and it was error to exclude it.    That the book was issued and published by the company after the date of the policy in suit is not material.    It was not pretended that it did not apply to all policies theretofore issued.    Taking the record as it stands, and conceding the truth of the offer in the 20th assignment, it is clear the company had in its possession on the 14th of January the sum of $67.72 in cash belonging to the assured.    It was urged that it could not have been applied to the payment of the premium without his consent.    No sufficient reason has been advanced in support of this proposition.    Suppose the company had so applied it, could the assured have recovered it back ?    Could not the company

[Girard Life Ins. Co. v. Mutual Life Ins. Co.]

have set off the unpaid premium in any suit that he could have brought for such purpose? It is true, mutual demands do not necessarily extinguish each other, but that is not the question here. The true point is the power of the company to make the application, and the right to set off the premium against a suit for the dividend. It was urged that the application of such a rule to the affairs of a large insurance company may seriously embarrass its business. On the other hand, the forfeiture of policies for non-payment of premiums, when the company has in its possession money sufficient to pay them, may seriously embarrass the unfortunate assured. The argument, *ab inconvenienti*, is certainly as strong on the one side as the other. As a matter of fact, the consent of the assured to the appropriation may be presumed. That he would object to it and thereby forfeit his policy is a proposition too absurd to be seriously considered.

It may be urged that the amount of the dividend had not been ascertained on the 14th of January. If this be so, it does not help the company. The dividend had been declared on the first of that month, and if its precise amount had not been determined by the 14th, it was no fault of the assured. It could not have been difficult for the company, with its past experience and knowledge of the previous year's business, to have measured the dividend with reasonable accuracy. And if doubt existed upon this point, or as to the willingness of the assured to apply the dividend to the payment of the premium, equity and a just regard to his rights would require the company to seek information as to these matters, before proceeding to the harsh measure of forfeiting the policy. The plaintiff offered to show that Mr. Magarge had used previous dividends in payment of premiums. The company had therefore reason to believe from its prior dealings with him, that he would have desired such application.

While a court of equity will sustain a forfeiture under some circumstances, it will scrutinize the transaction and require that all the rights of the assured shall be respected. It is quite possible, there may be facts which in the judgment of the officers of the defendant company justified them in declaring the policy forfeited in this case; yet we are constrained to say, that it is inequitable and against the policy of the law to permit an insurance company to forfeit a life policy for non-payment of a premium, when such company has in its possession the money of the assured to an amount covering the premium, and which it has the power to apply to its payment.

The court below excluded evidence on behalf of the plaintiff offered for the purpose of showing the previous course of dealings between the defendant and the assured, as to the payment of over-due premiums. This point was squarely decided, when the cause was here before. It was said by Justice TRUNKEY, "no vestige of

[Girard Life Ins. Co. *v.* Mutual Life Ins. Co.]

reason is discoverable for refusing the premium tendered the second day after it became due." Under this ruling, the evidence referred to in the 7th, 8th, 9th and 10th assignments of error ought to have been received. The learned judge would doubtless have admitted it, had not his attention been called to two lines printed upon the policy, declaring in substance that all receipts of overdue premiums are acts of grace and courtesy on the part of the company, and shall in no case be considered a precedent or waiver of forfeiture.

This clause is peculiar, whether we regard its position on the policy, or its phraseology. It does not appear on the face of the policy, nor does the policy refer to it in any manner, as is usual where printed conditions annexed are made a part of the contract. Nor does it appear upon the back of the policy, where it would readily meet the eye, but upon the inside, being two lines of printed matter at the top of the second or inside page, over the ruled columns intended for the entry of the payment of premiums from time to time. No such entries were ever made, and the entire page is a blank, save the two printed lines referred to, and the printed headings. The phraseology is peculiar in this, that it refers to "receipts *heretofore* by the company of premiums after they fell due," as well as all future receipts of premiums, &c. Whether this clause was upon the policy when it was issued, does not appear. The learned court below treated it as a supplemental agreement. I quote its language: "It is evident that it was written after premiums had been received which were overdue, and before the 16th of January, 1871, when the last tender of premium was made." Had it been written as the learned judge states, there would have been much force in this suggestion, in view of its phraseology. But the words are printed, and there was absolutely nothing in the case to show when they were placed there. Not the least remarkable feature of this matter is the fact, that no one, not even the defendant or its counsel, appears to have had any knowledge of this clause until the case was brought into this court upon a second writ of error, when for the first time it was set up in the court below as an answer to the plaintiff's allegation, that the defendant had lulled the assured into security by the acceptance of overdue premiums from time to time.

It is settled that the conditions annexed to a policy are as much a part of the contract as though incorporated in the instrument: 1 Hen. Black. 254; 6 Term Rep. 710; Fire Association *v.* Williamson, 2 Casey 196; Trask *v.* The State Mutual Ins. Co., 5 Id. 198; Inland Ins. Co. *v.* Stauffer, 9 Id. 397; Desilver *v.* Ins. Co., 2 Wright 130; Ins. Co. *v.* Gottman's Adm'rs, 12 Id. 151.

While this line of decisions relates almost exclusively to fire policies, the reason of the rule would apply equally well to life policies. In the former, however, as is well known, it is the

[Girard Life Ins. Co. v. Mutual Life Ins. Co.]

invariable practice for the policy to contain a reference to the conditions, and the insurance is made "according to the tenor of the conditions hereto annexed." While the cases cited do not disclose this fact, it is safe to assume it existed in all of them. The policy in suit contains upon its face a condition authorizing a forfeiture of the policy in case of the non-payment of the premium; and refers to no condition or stipulation outside of its four corners, excepting the declaration of the assured made in his application for the policy. It was said by Mr. Justice Swayne in Brittan v. Barnaby, 21 How. 536: "In the first place, as loose, indefinite, and dangerous as some of the decisions in the English and American reports are, concerning memorandums of this kind, no case can be found in either in which effect has been given to any memorandum which was not on the face or the margin of the policy." This, however, is not authority, for it was not the point decided; but we must regard the effect of a memorandum not purporting upon its face to be a condition upon which the insurance was effected, printed in an obscure place on the policy and in no way referred to in the policy itself, as an open question. There are reasons why it is not necessary to decide it in this case.

This memorandum can hardly be regarded as a condition of the policy. It is more in the nature of a qualification of the receipts for the premiums, which were intended to be endorsed on the policy from time to time. This was its manifest object. But no such receipts were endorsed; there was nothing to qualify and nothing to which it could attach. In point of fact, the receipts, if any were given, were loose receipts. Did they contain any such qualification? We have no evidence upon this point. If they did not, the act would be too equivocal to hold the assured to notice that the acceptance of overdue premiums would not be drawn into precedent. Nothing could be better calculated to lull the assured into security than the giving of receipts for overdue premiums without such warning prod, even though the attention of the assured had been specially called to the memorandum in question.

If the defendant company relied upon this clause to enforce its forfeiture of the policy and prevent a recovery in this suit, the point should have been made at an earlier stage of the proceedings. Having failed to set it up until after at least two trials in the court below and a hearing in this court, we must regard it as having been waived. It is no answer to this, to say that neither the defendant nor its counsel knew of the existence of this memorandum until the last trial in the court below. That it was placed upon the policy by the company or its authorized agents is too plain to be disputed; it cannot now be permitted to say it did not know of its own act, and good faith to the assured required that, if intended as a defence, it should have been set up at the earliest moment. To spring it upon the plaintiffs now, after all these

[Girard Life Ins. Co. *v.* Mutual Life Ins. Co.]

years of litigation, would be unfair to them. To admit such alleged want of knowledge on the part of the defendant company as an excuse for this delay, would be especially inequitable in view of the fact that it is sought to charge the assured with knowledge of the memorandum from its inception. We do not think it was a sufficient ground for the rejection of the evidence referred to.

We are unable to see any error in the exclusion of the evidence referred to in the 10th assignment. The offer was not broad enough to give it any value as evidence. The mere fact that the witness received no notice of the premium falling due on January 14th amounts to nothing. Had there been an offer to show that previous notices had been sent and this one purposely omitted with the design of forfeiting the policy, it would have been clearly admissible. "Forfeitures are odious in law, * * * and there must be no cast of management or trickery to entrap the party into a forfeiture:" Helme *v.* Ins. Co., 11 P. F. Smith 107.

The last question to be noticed relates to the exclusion of the evidence offered by the plaintiff to show a custom or usage among life insurance companies in Philadelphia to receive overdue premiums. (See assignments 11th to 16th inclusive; also 21st.) That such a custom may be shown was ruled in Helme *v.* The Ins. Co., *supra*, and in this case, upon the former writ of error, where it was said by Justice TRUNKEY: "Upon the verity of the testimony of Mr. Ashbrook, the jury would have been warranted in finding, that it is a custom among life insurance companies to receive premiums if tendered at any time within thirty days of the time they fall due, provided the insured is in good health, and that this custom includes policies stipulating for forfeiture in case of non-payment of premium on the day." Mr. Ashbrook was not called at the last trial in the court below, but another witness, George E. Wagner, was called to prove the custom. Several of the questions put to this witness were objectionable, and their exclusion was not error. But we are unable to see any sufficient reason why the question referred to in the 15th assignment should have been excluded. It was as follows: "Does the custom apply to policies containing a clause of forfeiture for non-payment of premium on the day it is due?" Of course the custom sought to be proved must be applicable to contracts of insurance such as the one in suit. But applicable in what respect? Manifestly in the matter of forfeiture, which was the only point the custom had reference to. The question was carefully framed to meet this view, and it was error to exclude the evidence.

What has been said sufficiently covers the various assignments of error.

The foregoing may appear inconsistent with my dissent in 5 Norris 236. The case as now presented differs in many of its

[Girard Life Ins. Co. *v.* Mutual Life Ins. Co.]

essential features from the one there decided, and as to others my views have been modified.

The judgment is reversed and a *procedendo* awarded.