Poles *v.* State Mutual Benefit Society, Appellant.
Poles *v.* Industrial Health, Accident and Life Insurance Co., Appellant.

Argued October 7, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Ralph S. Croskey,* of *Edwards & Croskey,* with him *Theodore L. Reimel,* for appellants.

*Arthur M. Soll,* for appellee.

OPINION BY PARKER, J., December 17, 1937:

These two cases were by agreement tried before one jury in the court below and were argued at the same time before this court. As the questions involved in the two cases are the same, they will be disposed of by us in one opinion. The suits were brought by Anna Poles in one case against the Industrial Health, Accident and Life Insurance Company, now called Industrial Life Insurance Company, and in the other case against the State Mutual Benefit Society, to recover the face of industrial life insurance policies on the life of a sister of the beneficiary. The sole defense argued in this court in each case was that the policy lapsed automatically for the failure to pay weekly premiums for three successive Mondays, the day of the week on which such premiums were payable.

To avoid confusion we will refer to the facts in the Industrial Life Insurance Company case, as the facts for all practical purposes are the same in the two cases.

The plaintiff's case was made out from the pleadings with the exception of one item and that was the receipt book furnished by the insurance company containing all receipts for premiums paid. There was no dispute as to these receipts. The defendant offered no evidence. There were consequently no facts to submit to a jury. The trial judge directed a verdict for the plaintiff for the face of the policy with interest. Defendant's motion for judgment n. o. v. was refused and it appealed to this court from such refusal.

The receipts offered by the plaintiff showed that the premiums required to be paid were not paid for three successive Mondays, to-wit, December 16, 23 and 30 in the year 1935, and the insurance company alleged that the policy therefore automatically lapsed when the payment was not made on or before December 30, 1935. The policy was dated May 29, 1933 and called for the payment of weekly premiums of 21¢ on Monday of each week. The portion of the policy dealing with lapses for non-payment of premiums was as follows: "3. If the weekly premiums are due and unpaid for three successive Mondays, this policy becomes lapsed automatically at the close of business on the third Monday, and can be reinstated only (a) by payment in full of all arrears and (b) the presentation to the Company of satisfactory evidence of the good health of the insured, both of which are conditions precedent to reinstatement. Payment of premiums after this policy has so lapsed, without presenting such evidence of good health, will not reinstate this policy, but will only entitle the insured, or the beneficiary, to a return, after demand, of the premiums actually paid after the date of such lapse."

If the facts relied upon by the defendant were the only ones in the case which are material and relevant, it would readily be agreed that judgment should be entered for the defendant. There are, however, other important and undisputed facts to which we will refer and which lead to an opposite conclusion. The insured

paid to the defendant after the alleged lapse of December 30, 1935, at different times, six separate installments of 21 cents, the exact dates of payment being January 6, 11, 18, 20, 27 and February 3, 1936. The insured died on February 4, 1936. Receipts for these payments were entered by an agent of the company in the receipt book provided by the company for that purpose. The money was received and retained by the company and it did not offer to return the same until April 27, 1936.

There are other important facts showing a course of conduct adopted by the insurance company and extending over a considerable period, a few of which instances we will detail. None of the premiums due on January 28, February 4, 11 and 18, 1935 were paid until February 23, 1935, and then only a portion of the overdue payments was paid. Not only so but in the period from February 16 to December 23, 1935, there were more than thirty occasions on which the defendant accepted and retained premiums where, if we accept defendant's own interpretation of the contract of insurance, the company was in a position on that number of Mondays to take advantage of the automatic lapse of the contract.

In its affidavit of defense as well as in its letter to plaintiff's counsel, the company after the death of the insured offered to return only $1.26 of the premiums paid. In other words, although the policy on its theory lapsed on February 11, 1935, and on numerous occasions thereafter, it continued to accept and did accept and retain forty-one separate payments of weekly premiums. It continued to receive these payments until the day before the insured's death. After death it elected to stand on a lapse as of December 30, 1935 and thus avoid liability not only for the death benefit but for the return of premiums paid for many months. If the insurance business could be conducted in this manner, it would be a very profitable one, but not a

lawful one. The company could continue to receive and retain premiums until death then choose as the time for forfeiture the last occasion, refuse to pay the policy and return only a few of the premiums paid before death and after the last lapse.

We are of the opinion that a reasonable and well-balanced mind could reach but one conclusion from these admitted facts, that is, that the company intended to waive strict compliance with the condition in the policy for the prompt payment of premiums. Where an insurance company adopts a course of conduct which induces an honest belief, reasonably founded, in the mind of the policyholder that strict compliance with stipulations for prompt payment of premiums will not be insisted upon and that payment may be delayed without incurring a forfeiture, the company will be deemed to have waived the right to claim an automatic forfeiture and it will by its conduct be estopped from enforcing the same. See 3 Couch Cyc. of Insurance Law, §681. "The doctrine that an insurer may waive its right to insist that the rights of the insured have been forfeited extends to practically every ground for denying liability ...... It also applies ...... to a default in the payment of a premium, which may be waived after the premium has become due": 14 R. C. L. 1155, §335. The company ought not to be permitted to take advantage of a default which it encouraged: *Helme v. Phila. Life Ins. Co.*, 61 Pa. 107, 110.

Forfeitures, if no longer odious, are not favored either at law or in equity. This principle is not peculiar to insurance law, but has frequently been applied to contracts between other classes of parties: *Westmoreland etc. Natural Gas Co. v. DeWitt*, 130 Pa. 235, 18 A. 724; *Duffield v. Hue*, 129 Pa. 94, 109, 18 A. 566.

The question of waiver was one for the court under the circumstances present here. The principle is analogous to that applied when the question for consideration is one of reasonable time; in fact, there is a time ele-

302

ment here involved. "What is a reasonable time is a question of fact for the jury; but where the facts are undisputed, and but one inference can be drawn therefrom as to reasonableness, the question becomes one for the court. The matter is by no means one which a judge is required to decide in each instance, but only in the limiting cases as indicated": *Tinius Olsen Test. Mch. Co. v. Wolf Co.*, 297 Pa. 153, 157, 146 A. 541.

The appellant relies largely on the case of *Mitchell v. Alta Life Ins. Co.*, 116 Pa. Superior Ct. 490, 176 A. 785. That case involved the reinstatement of a policy which had lapsed. Here the company by reason of its course of conduct was not in a position on December 30, 1935 to rely on the automatic lapse of the policy. If it then desired to enforce the forfeiture it became its duty to so notify the insured and give her a reasonable time to comply with the strict conditions of the policy. The question involved in the present case is not one of reinstatement but of lapse. The policy did not lapse automatically on December 30, 1935. The insurance company could not lull the insured to sleep relying on a reasonable and well founded belief that the company would not enforce an automatic forfeiture and then wait to declare a forfeiture or lapse until after the insured had died.

The judgment in each case is affirmed.