Mary A. **WISNIEWSKI**, Widow of Robert Wisniewski, Appellant,

v.

The **PRUDENTIAL INSURANCE CORPORATION OF AMERICA.**

No. 17772.

United States Court of Appeals, Third Circuit.

Argued Oct. 2, 1969.

Decided March 4, 1970.
Rehearing Denied April 7, 1970.

Louis M. Tarasi, Jr., Conte, Courtney & Tarasi, Pittsburgh, Pa., for appellant.

John H. Scott, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.

Before STALEY, SEITZ and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Mary A. Wisniewski (plaintiff), widow of Robert Wisniewski, appeals from the district court's partial denial of recovery on an insurance policy on the life of her husband. The policy had been issued by defendant, Prudential Insurance Corporation (Prudential), on November 14, 1957, and named plaintiff as beneficiary. After Mr. Wisniewski's death on December 22, 1964, a controversy arose concerning a possible lapse of the policy for nonpayment of premiums. Prudential treated the policy as having lapsed and relied on the provision of the insurance contract dealing with nonforfeiture. The provision, required by law,[1] provides that in the event of a default in the payment of premiums, the policy is to be automatically continued as paid-up term insurance. Plaintiff contended that the policy had not lapsed and that she, as beneficiary, was entitled to the full value of the policy. At the conclusion of all of the evidence, both plaintiff and Prudential moved for a directed verdict. The court denied plaintiff's motion and granted Prudential's finding that the evidence presented no disputed issues of fact for the jury to consider. Judgment was entered for plaintiff in the amount of the paid-up term insurance rather than in the amount due had

1. Pennsylvania Nonforfeiture Law, 40 Pa.Stat.Ann. § 510.1.

there been no default. Plaintiff's appeal followed.

Plaintiff contends that there were disputed factual issues and that the court thereby erred in not allowing the case to go to the jury. As this court stated in Pritchard v. Liggett & Myers Tobacco Co., 295 F.2d 292, 295 (3d Cir. 1961):

" * * * [A] directed verdict can be entered only where the facts are such that reasonable men could not draw different conclusions from them. In passing on the motion, a court must view the evidence in the light most favorable to the party opposing it, giving him the benefit of every favorable inference."

It must be determined, therefore, whether any of plaintiff's evidence could allow a jury to infer that the policy of insurance had not lapsed at the time of her husband's death.

■ We first consider plaintiff's contention that the dividends, which had admittedly accrued under this policy, should have been applied by Prudential to pay past-due premiums to prevent a lapse of the policy. Prudential's reply is that Mr. Wisniewski, in his application for the policy, had directed that all dividends were to be retained by it to accumulate at compound interest, and that Prudential was thus prohibited from using them for another purpose such as payment of premiums. Plaintiff's rejoinder is that in March of 1963 she orally instructed a Prudential agent to apply dividends against future default in premium payments to prevent a lapse. It is this assertion which forms one basis for plaintiff's contention that the district court committed error in not allowing the case to go to the jury. We turn to the evidence pertinent to that issue.

The insurance contract provides that upon proper written notice to the Home Office any such declared dividend may be " * * * (2) applied to the reduction of any premium due * * * or, (4) left to accumulate * * *." Wisniewski originally directed in writing that the dividends be left to accumulate. Prudential therefore correctly asserts that it was contractually prevented from applying the dividends in reduction of any premium due absent proper written notice to the home office requesting such application. Prudential conceded, however, that the written notice requirement is fulfilled if a written request is mailed to the Home Office by the regional office after an oral request by the insured.

In the period of December 1962 through March of 1963, the required premiums were not paid. The policy had lapsed but a Prudential agent went to the Wisniewski home in March 1963, to talk about the lapsed policy. Plaintiff testified that when she told the agent that she had no cash to pay the back premiums, he then asked her how long she had had the policy. Upon learning that it had been issued in 1957, the agent told her that it was likely that there were dividends accumulated on the policy. At this point she testified:

"Q. So what happened?

"A. So he called the office from my home and took some numbers, you know, from the policy, and he said that I had dividends built up, and if I wanted it to be paid it could be paid up with my policy to keep it in force. I was real glad; I said sure, so he took—I got paid up with my dividends then.

"Q. Did you talk to him about paying future premiums with the accumulated dividends?

"A. Yes. He said any time I get in a jam like that, it says you can always pay it with that, with dividends."

Plaintiff argues that her quoted testimony would permit a jury to conclude that she requested that dividends be automatically applied to prevent future premium lapses.

Plaintiff's testimony shows that at her request dividends were applied to the payment of the premiums then in default. Contrary to plaintiff's conten-

tion, there is no testimony that plaintiff at any time requested that in the future the dividends should automatically be applied to premium lapses. Rather, plaintiff's testimony permits at most an inference that the same request procedure might be used in the future if she got "in a jam like that." This construction of plaintiff's testimony is consistent with her subsequent course of conduct. The policy went into default several times after March of 1963 and the Wisniewskis did not utilize available dividends to pay the premiums in arrears. Rather, the policy was reinstated each time upon execution of a reinstatement application and the payment of the premiums by or on behalf of the insured.

Plaintiff places great reliance on Girard Life Ins., Annuity & Trust Co. v. Mutual Life Ins. Co., 97 Pa. 15 (1881). But that case is of no help in resolving the present issue because it held that unless the insured states to the contrary, it is presumed that dividends are to be used to pay past due premiums to prevent a lapse. The policy here has a written direction by the insured rebutting the presumption and, as we have stated, there is no evidence creating a jury issue as to any subsequent oral direction to apply the dividends to past due premiums.

We agree with the district court that the evidence created no jury issue as to whether Prudential should have applied accumulated dividends to the premiums in default.

Plaintiff contends that there was also evidence which presented another question of fact for the jury. The monthly premium for November, 1964, was due on the 14th of that month. By the terms of the policy, the insured was given a 31-day grace period in which to pay the premium before the policy was "officially" lapsed. Any subsequent application for reinstatement had to be approved by the Home Office. Prudential received a check dated December 19, 1964, by mail, in an envelope postmarked December 23, 1964. This envelope was received on December 28, 1964. Wisniewski died on December 22, 1964. The check was for $28.88, an amount equal to the premiums for two months. The grace period for the premium due on November 14, 1964, had ended on December 15, 1964. Thus, indisputably the policy had lapsed even prior to the date shown on the check. However, Mr. Little, who had been a Prudential agent, testified that when he went to the Wisniewski home on December 29, 1964, for the purpose of completing forms necessary to perfect the death claim, plaintiff informed him that prior to his death her husband had mailed a check for the November and December premiums. She testified to the same effect. The agent also testified that had Mr. Wisniewski mailed the premiums prior to his death, the company would have honored the claim and paid the insurance. He further testified that for its purposes Prudential employs the postmark date in determining the mailing date. Plaintiff asserts that on the basis of the foregoing testimony the jury could reasonably have found that the check had been mailed prior to the death of Mr. Wisniewski. Coupling this testimony with Mr. Little's statement that the claim would then have been honored, plaintiff argues that the jury could have concluded that the policy had not lapsed.

We think plaintiff poses a jury issue as to an irrelevant fact. The policy had admittedly lapsed prior to the date plaintiff says the check was mailed. By its terms the policy could only be reinstated by filling out a reinstatement application which required evidence of insurability. This was the procedure followed in the several previous instances of default. Plaintiff must therefore rely on a modification of the policy. But the policy specifically provides that "no agent [with exceptions here irrelevant] has authority * * * to waive a forfeiture * * * or to bind the company by making any promise or representations * * *." We doubt whether any question of modification is even involved here because the agent

who testified was not one authorized to modify a policy.

■ But even if we look to the testimony relied upon by plaintiff to show modification, we think plaintiff is no better off. The agent's testimony was that Prudential would accept a post-death application to reinstate the policy on the condition that past-due premiums were mailed prior to death—with the postmark date the controlling evidence as to the mailing date.[2] If we assume that this testimony would permit a finding that Prudential was modifying the requirements of its policy to its detriment, we think it clear that the terms of the modification as adopted by Prudential must control. Plaintiff was not free in these circumstances to reject the portion of the testimony which made the postmark controlling and thereby create a jury issue as to the mailing date. We find no error in the decision that no jury question was posed by the evidence on this issue.

■ Plaintiff next asserts that a jury issue was created as to her testimony, corroborated by a friend, that she made a double premium payment in July 1964. If such a payment was made, because of the grace period involved, the policy was not in default at the date of Mr. Wisniewski's death.

If we were confined to the testimony we might feel compelled to conclude that a jury issue was presented here. But at least four documents contemporaneously made, three belonging to and in the possession of plaintiff, compel but one conclusion: no double premium was paid. The testimonial evidence on behalf of plaintiff is therefore so inherently incredible in the light of the documents that it would be a perversion of our legal system to allow a finding for plaintiff on this issue.

■ Plaintiff asserts that certain waiver and estoppel issues should have been resolved by the jury. We find these contentions to be without merit either because of the absence of the requisite evidentiary base or because of contrary Pennsylvania law.

The judgment of the district court will be affirmed.

STALEY, Circuit Judge (dissenting):

I respectfully dissent. On a motion for a directed verdict, the evidence adduced by the plaintiff and all reasonable inferences to be drawn therefrom are to be viewed in a light most favorable to her. The trial court may not weigh the evidence since this is the function of the jury. Webb v. Illinois Central R. Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503 (1957); Sano v. Pennsylvania Railroad Co., 282 F.2d 936 (C.A. 3, 1960). The Supreme Court has stated that, viewed in this perspective, actions are solely for the jury "in all but the infrequent cases where fair-minded jurors cannot honestly differ." Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 510, 77 S.Ct. 443, 450–451, 1 L.Ed.2d 493 (1957). I do not believe that the instant case is one which falls into the latter category.

The majority asserts that it is in agreement with the district court that the evidence created no jury issue as to whether Prudential should have applied accumulated dividends to the premiums in default. After setting forth plaintiff's testimony as to her oral direction in March of 1963, to apply dividends to premium arrearages, the majority discusses how its own interpretation of that testimony is consistent with plaintiff's subsequent course of conduct. Weighing the evidence in this manner is the function of the trier of fact. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the inquiry whether, with reason, the conclusion may be drawn that the policy of insurance had not lapsed prior to Mr. Wisniewski's death. See Rogers v. Missouri Pacific R. Co., 352 U.S. at 506–507, 77 S.Ct. 443. Viewing the evidence in this case in a light most favorable to the plaintiff, I

---

2. The business records of Prudential show that the postmark date was used as the "pay date" for premiums paid by mail.

do not find it unreasonable to conclude that an oral direction had been given to Prudential requesting that dividends be applied to prevent future lapses for non-payment of premiums. Prudential conceded that written notice by the insured is not actually required in order for accumulated dividends to be applied to premiums, and in fact it was uncontradicted that Mrs. Wisniewski was not required to give written notice in March of 1963 when accumulated dividends were used for this purpose. If this evidence was negated by evidence such as her subsequent course of conduct, it remains the jury's function to weigh the evidence, and not the court's. The district court thus erred when it prevented the case from going to the jury on this issue.

Plaintiff also contends, and I agree, that there was evidence which presented a second question of fact for the jury. The testimony in this case was in agreement that the Wisniewskis had purchased an insurance policy from Prudential in 1957 and had paid the premiums on a monthly basis for seven years. During the last two years of that period, the Wisniewskis had repeated difficulty paying these monthly premiums, and the policy "lapsed" on at least seven occasions. In every one of these instances, Prudential made every effort to keep the policy in effect, and each "lapse" was corrected by the payment of the premiums due and the signing of a Prudential reinstatement form by either Mr. or Mrs. Wisniewski. There is no doubt that Prudential would have, as a matter

of course, reinstated the policy again in December of 1964 had it not been for Mr. Wisniewski's death.[1] Prudential's agent, Little, testified that had the insured paid the premiums prior to his death, the company would have reinstated the policy even though the pro forma averments of the insured's continued good health could no longer have been made. It was in evidence that Prudential had received a check, signed by Robert Wisniewski and dated December 19, 1964. Mrs. Wisniewski testified that this check had been mailed on December 19, 1964. Prudential, however, records the postmark date as the controlling date of payment, and in this case the payment was postmarked December 23, 1964, the day after the insured died. The majority holds that Mrs. Wisniewski is bound by Prudential's practice if she is to take advantage of their voluntary modification of the policy for her benefit.

It is clear, however, that there was evidence presented that the insured had, in fact, mailed the premium prior to his death, and Prudential's district manager testified that the mail was delayed at the time due to the holidays. There is no question that had the payment been postmarked December 19, December 20, December 21, or December 22, the date of death, Prudential would have reinstated the policy. Thus there was a real jury question presented as to whether the insured had mailed the payment before he died and a post office delay caused the envelope to be postmarked the day after his death.[2]

---

1. Cf. Poles v. State Mutual Benefit Society, 129 Pa.Super. 297, 301, 195 A. 429, 431 (1937), where the court states:

   " * * * Where an insurance company adopts a course of conduct which induces an honest belief, reasonably founded, in the mind of the policyholder that strict compliance with stipulations for prompt payment of premiums will not be insisted upon and that payment may be delayed without incurring a forfeiture, the company will be deemed to have waived the right to claim an automatic forfeiture and it will by its conduct be estopped from enforcing the same."

See also, Klopik v. General American Life Ins. Co., 155 Pa.Super. 659, 39 A.2d 281 (1944); Bush v. Prudential Ins. Co. of America, 150 F.2d 631 (C.A.3, 1945) (interpreting Pennsylvania law).

2. If Prudential is sincere in its policy of honoring the insurance if the premium, though late, is still paid prior to death, then it should not penalize plaintiff here because of a delay in processing the mail. Of course, the inference can be made that it was not mailed until after the insured died, but that is a question for the jury and on a directed verdict, the court must take Mrs. Wisniewski at her word.

Viewing the evidence in a light most favorable to the plaintiff, I conclude that a jury could reasonably find that the policy had not lapsed under either theory advanced by plaintiff. It was thus error for the district court to direct a verdict for the defendant.