Urian, Appellant, v. Scranton Life Ins. Co.

Argued October 17, 1933.

Before Trexler, P. J., Cunningham, Baldrige, Stadtfeld and James, JJ.

*George J. Edwards, Jr.,* and with him *Robert F. Bonner,* for appellant.

*W. Heyward Myers, Jr.,* and with him *W. J. Fitzgerald,* for appellee.

Opinion by James, J., March 13, 1934:

This is an action of assumpsit brought by Florence C. Urian, wife of the insured, upon two policies of life insurance in the sum of $5,000 each. The defense set up by defendants was that the policies had lapsed for non-payment of premiums and that all plaintiff could recover was $855 on each policy, aggregating $1,710, being the paid-up insurance value at the end of the preceding policy year. The trial resulted in a directed verdict for plaintiff in the sum of $1,710, with interest from the date of the verdict, upon which judgment was entered, from which plaintiff has appealed.

Defendant issued to the insured, George Alva Urian, a policy in the sum of $5,000 bearing date of February 19, 1924, and later issued another policy for the same

amount bearing date of February 27, 1924, under each of which policies an annual premium of $164.60 was due. On February 19, 1930, the insured paid defendant sixty cents in cash and gave it his note payable April 19, 1930 for the remaining $164 of the premium which was accepted by the defendant, and on February 27, 1930, for the premium of $164.60 due that day on the second policy, the insured paid sixty cents in cash and gave it his note for $164 due April 27, 1930. Both notes provided as follows: "It is agreed that in the event of failure to pay this note at maturity, the said policy shall without notice to any party interested therein, be forthwith null and void, except as to the statutory or other right, if any, of the insured to a surrender value under said policy." On or about the respective due dates, insured paid $14 on account of each note, leaving a balance of $150 unpaid on each of them, which extended both notes to May 19, 1930 and May 27, 1930, respectively. At about the expiration of the extension period the insured gave defendant his two checks for $25 each as further payment on account of said notes and credit was given on each note for the sum of $25 and a statement was endorsed on the notes to the effect that the unpaid balance on each of them was $125 due June 19, 1930 and June 27, 1930. Both of these checks were returned to defendant unpaid by the bank on which they were drawn and the notes and checks are still in possession of the defendant. The insured died September 11, 1930.

Appellant argues that the unpaid portions of the premiums for the policy year in which insured died constituted indebtedness against the policies under their own provisions and that the policies remained in full force.

The provision of the policies relating to premiums is as follows: "Premiums: All premiums are payable in advance at the home office of the company, but will be accepted if paid to an agent authorized to receive

the same in exchange for a receipt signed by the treasurer and countersigned by such agent. Upon any anniversary of this policy, the mode of premium payment may, upon written request to the home office, be changed from annual to semi-annual or quarterly, or vice versa, at the premium rates in use by the company at the date hereof, but the payment of any premium or instalment thereof shall not continue this policy in force beyond the date when the next premium or instalment thereof is payable. If any premium or instalment thereof be not paid before the end of the period of grace, then this policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the company, except as provided in this policy. In the event of death any unpaid portion of the full premium for the then current policy-year shall be considered an indebtedness to the company against this policy.''

Appellant urges that this case is brought squarely within that portion of the provision which reads: ''In the event of death any unpaid portion of the full premium for the then current policy-year shall be considered an indebtedness to the company against this policy.'' In stressing this proposition, appellant attempts to separate the latter portion from the entire section of the policy relating to the payment of premiums. In so doing, he is attempting to apply an interpretation to the latter portion without reference to the general context of the clause relating to payment of premiums or to the subject matter which is generally discussed and treated in this provision, which would be a distortion of the plain purpose of this entire clause. For us to properly apply the meaning to the latter portion we must construe it with reference to what has just immediately preceded it. The sentence immediately preceding the sentence stressed by appellant relates to premiums that are not paid before the end of the period of grace, in which case it is

provided that the policy shall immediately cease and become void. Immediately preceding that sentence is the sentence providing for the change of payment of the annual premium either to a semi-annual or quarterly basis, or vice versa, but, in any event, the payment of any premium shall not continue the policy in force beyond the next due date of the premium or instalment thereof. It would be a distortion of the language of the latter portion of the provision for us to apply any other meaning to it than a meaning relating to what had immediately preceded it. Undoubtedly, the language involved relates to situations in which the premium has not been paid upon the due date but the period of grace has not expired, during which period, if death occurs, the premium for that year shall be deducted in full and in the event of a payment on a semi-annual or quarterly basis, if death occurs during the quarterly or semi-annual period, the unpaid portion of the annual premium shall be considered an indebtedness to the company and be deducted from the face of the policy at the time of settlement.

"A contract of insurance will, if possible, be so construed as to protect the insured and doubts, if any, will be resolved in his favor": MacDonald v. Met. Life Ins. Co., 304 Pa. 213, 218, 155 A. 491. But where language is clear and unambiguous it can not be construed to mean otherwise than what it says: Urian v. Scranton Life Ins. Co., 310 Pa. 144, 165 A. 21.

Appellant further contends that defendant waived prompt payment of the premiums and a new method of performance was adopted by the parties which had not been rescinded at the time of insured's death.

Undoubtedly, defendant had a right to waive prompt payment of the annual premiums due under the policies and under Art. III, Sec. 346 of the Act of May 17, 1921, P. L. 682 (40 PS 471), it could have

accepted a bona fide obligation, with legal interest, in payment of any premium. But the note or obligation accepted by defendant was for a definite period and subject to certain conditions in the event of non-payment. During the period from February 19th and February 27th to June 19th and June 27th, respectively, the policies were in force but, the policies were not to be extended beyond the time to which they were extended by agreement of the parties and under said agreement the failure to pay the notes at maturity, without further notice to any party interested therein, rendered the policies null and void except as to the statutory or other right, if any, of the insured to a surrender value under said policies. The fact that failure to pay the notes rendered the policies null and void except as to the surrender value, when insured was entitled to his statutory elections of taking extended insurance, paid-up insurance or the cash surrender value, does not affect the condition in the notes that the policies were to be null and void in the event of failure to pay at maturity. As to just what the course of dealing was subsequent to the due date of the notes, other than the retention of the checks and the notes, we find nothing in the record, while on the contrary we find no evidence in the record other than its agreement to extend the time for the insured to pay as above set forth. The extension of time at the farthest, assuming that the acceptance of the checks was an acknowledgment of payment, would not extend the due date of the notes beyond June 19 and June 27, 1930, and under the provisions of the notes it was specifically provided that in the event of the failure to pay the notes at maturity, the policies shall be forthwith null and void. Beyond the period of the month of June, 1930, we find no evidence in the record of the waiver of these terms in the notes and the failure to make payment or extend the time of pay-

ment automatically rendered the policies null and void. This transaction was for the benefit of the insured and the acceptance of the notes on the part of the company instead of the cash payment as required by the policies gave him the benefit of the extended insurance solely upon his personal obligation. This obligation was restricted to a definite time of sixty days and was extended for an additional period of thirty days and then extended further for another period of thirty days to the respective dates of June, 1930 as the farthest dates at which the policies would be effective.

In Seeley v. Union Central Life Ins. Co., 10 Pa. Superior Ct. 270, it was held that where extended time for payment of an insurance premium is granted for a note given, a stipulation that if the note given for the premium is not paid at maturity the policy, including all conditions for surrender or continuance as a paid-up term policy, should be null and void, is one that will be sustained by the courts.

In the case of Rhodes v. Royal Union Mut. Life Ins. Co., 56 Pa. Superior Ct. 233, which is somewhat similar to the case at bar, the assured, on March 28, 1909 gave his promissory note, payable in thirty days, to the defendant company, in the sum of $41.76. This note provided that if it "is not paid at maturity, with interest, all liability under said policy, by reason of this note, shall cease." On April 18 or April 26, $5 was paid on account of the note, and the following endorsement made on the back thereof: "Extended 60 days." The renewed note fell due June 18, 1909. It was not contended that any payments were made on account thereof after expiration of the renewal. On December 20, 1909, the assured died. As was said by Rice, P. J., (p. 238): "The time for payment of the premium was extended by the giving and acceptance of the note, but liability on the policy ceased,

without any affirmative action on the part of the insurance company, upon the failure to pay the note at maturity. This was the express and unambiguous agreement of the parties, and such agreements have been sustained and enforced in numerous cases.'' It was further held that the mere retention of the premium note, after default in payment, does not furnish ground for presuming or inferring a waiver of the conditions upon which it was given and accepted; that even if the company made repeated demands and requests to have the note paid, it would not support a finding that the company waived its right to insist on the conditions expressed in the note, application, or policy.

We see no ground for distinction in the present case simply because the condition was inserted in the note. The insured's right to an extension of the payment of the premium was founded solely on the conditions in the note and, having failed to comply with the conditions, all rights under the policy ceased. An examination of the entire record does not disclose any evidence upon which a jury would have been justified in finding a waiver on the part of the company.

Judgment affirmed.