## Kash, Appellant, *v.* Sun Life Assurance Company of Canada.

Argued April 16, 1940.

Before Keller, P. J.,
Cunningham, Baldrige, Stadtfeld, Parker, Rhodes
and Hirt, JJ.

*Paul N. Barna,* for appellant.

*William H. Eckert,* with him *Richard G. Miller,* of
*Miller & Schmidt,* and *Smith, Buchanan & Ingersoll,*
for appellee.

Opinion by Baldrige, J., June 26, 1940:

This appeal is from the refusal of the court below to
strike off a non-suit entered in an action of assumpsit
brought to recover premiums, with interest, which the
plaintiff paid on two life insurance policies issued by
the defendant on May 10, 1935. One for $6,000 pro-
vided for the payment of an annual premium of $407.70
for twenty years, and the other for $4,000 contained the
same terms as the first, with the exception that the an-
nual premium was $271.80. Both included a grace
period of one month for the payment of premiums.

The appellant paid the premiums for the first two
years, but failed to meet the payments due on May 10,
1937. Sometime before May 10, he received from de-
fendant notice that the premiums were payable on that
date and that the dividends due on the policies
amounted to $63. Under the terms of the policies the

plaintiff had the option of applying the dividends in the reduction of the premiums for the ensuing year, but there is no stipulation therein that a partial payment of a premium will keep the policy alive for the fractional part of a year that the payment bears to the annual premium.

Plaintiff claims that his son and agent had instructed Wilkinson, in charge of defendant's branch office at Pittsburgh, to apply accrued dividends on premiums and thereby extend the policies after July 10, for a period which would be covered by that sum. Wilkinson was not an executive officer, and if he did consent thereto, he was without authority. The power of a local agent is not presumed to extend beyond the soliciting of insurance and the collecting of premiums and the business necessarily incident thereto. He does not have the authority to waive or alter any of the provisions of the contract to which the parties agreed: *Murphy v. Prudential Insurance Company*, 30 Pa. Superior Ct. 560; *Pyrich v. Scranton Life Ins. Co.*, 94 Pa. Superior Ct. 159; *Geha v. Baltimore Life Ins. Co.*, 110 Pa. Superior Ct. 236, 168 A. 525; *Peters et al. v. Colonial Life Ins. Co. of America*, 128 Pa. Superior Ct. 21, 193 A. 460. Moreover, each of the policies contained a provision that no person except an executive officer has the power to modify the contract or waive a lapse or forfeiture of any of the company's rights or requirements.

The plaintiff made no payment on account of the premiums due until June 10, 1937, when he paid $100, $55 of which was to apply on account of the premium due on the first policy and $45 on the premium of the second. On the same day he executed and delivered to the defendant a promissory note to its order, payable thirty days after date, to wit, July 10, in the sum of $556.25, the balance of the premiums due May 10, 1937. It contained the following clause: "I hereby agree that if the sum payable under this agreement be not paid

when due the policy shall be null and void and the assurance thereunder shall immediately cease unless the policy be continued in force under the Automatic Privilege."

The automatic privilege referred to is only applicable if there is a default in payment of premiums "after three full years' premiums shall have been paid." Admittedly, they were not paid for that period in either policy involved in this case.

Three days after the execution of this promissory note the plaintiff sent the defendant the additional sum of $13.25, which was applied to the first policy, so that on that date $113.25, only 1/6 of $679.50, the total premiums due on both policies, had been paid.

The insured having failed to pay his note, the defendant on August 9, 1937, notified him that his policies had lapsed and asked whether he desired to revive them before it sent him the amount of the accrued dividends. In the meantime no application of the dividends, in fact, had been made. We may state here that before this suit was brought the defendant notified the plaintiff that it held the note in evidence of non-payment of premiums.

On August 18, 1937, the defendant advised the plaintiff by letter that it would be better for him to change the premium paying basis to half yearly, stating: "Applying the dividends to the half-yearly premiums, we would require a cash payment of $176.45, including interest. If you will forward us this amount and complete the enclosed Certificate of Insurability, taking it to our Dr. H. J. Repman, Charleroi, Pa., in order that he may conduct a short form medical examination, and return it to us, we will be very glad to deal further with the revival." There was enclosed therewith a form for him to sign, changing payments of premiums to a semi-annual basis.

The signed application for reinstatement states: "I

agree that said policy shall not be deemed reinstated or changed by reason of any cash paid or settlement made in connection with this application or otherwise, until the company at its Head Office in Montreal, in acting upon this application, shall have duly reinstated or given approval to the change of said policy during my lifetime and good health."

Under the "REINSTATEMENT" provision in the event of default in the payment of any premium the policy may be reinstated at any time within five years from the date of default upon written application with evidence of insurability satisfactory to the company and upon payment of all arrears in premiums.

On September 1, 1937, the forms for changing the payment of premiums from annual to semi-annual were executed and returned to the defendant with a check for $176.45, which would have been the amount necessary to pay the balance of the semi-annual premiums if the policies had been reinstated and the premium paying basis changed. On September 10, 1937, the defendant, by letter, informed the plaintiff that his application for reinstatement could not be approved as the evidence of his insurability was unsatisfactory. On September 23, the defendant sent its check to the order of the plaintiff in the sum of $176.45 to refund the amount it had received earlier during that month. On October 7, another check was sent to him for $63, in payment of dividends that had accrued on the policies up to May 10. These checks were never cashed, but have been retained by the plaintiff.

It thus clearly appears that the company never changed the method of payment from annual to semi-annual, and that these policies by their own terms lapsed July 10, 1937, and were never reinstated. This court, in *Rhodes v. Royal Union Mutual Life Ins. Co.,* 56 Pa. Superior Ct. 233, 238, said: "The time for pay-

ment of the premium was extended by the giving and acceptance of the note, but liability on the policy ceased, without any affirmative action on the part of the insurance company, upon the failure to pay the note at maturity. This was the express and unambiguous agreement of the parties, and such agreements have been sustained and enforced in numerous cases."

There is not sufficient proof of any waiver of the terms of the policy. The acceptance of the note, on the express conditions which were not fulfilled, and of the check for $176.45, which was subject to the approval of the changing of the method of paying the premiums and the reinstatement of the policies, did not deprive the company of insisting upon a compliance with the terms of the policy. To give new life to the lapsed policy, the plaintiff was required to show not only the payment of the premium, but also his insurability: *Peters v. Colonial Life Ins. Co. of America,* supra. This he failed to do.

In *Gaskill v. Pittsburgh Life and Trust Company,* 261 Pa. 546, 104 A. 775, all the premiums on a policy issued in 1896 had been paid until December 15, 1914, when one for $217.50 fell due. The insured paid $100 and delivered to the company two notes, the first in the sum of $67.50, payable in two months, and the second for $50, payable March 15, 1915. The larger of the obligations was paid when due, but the other was not paid until March 17, two days after it was due, when the insurance company received in payment a check which was deposited March 20, 1915, and it was duly paid. The next day the company notified the insured that his policy had lapsed. A health certificate was then furnished by the company with the request that it be executed and returned. This was done but the company refused to accept it, and no attempt was made to return the payment made.

The court upheld a verdict for all premiums paid by the insured. There the company accepted payment in

*full* for the notes before notifying the insured that his policy had lapsed, thereby furnishing ground that it had waived its right to declare the policy lapsed for a two-day delay of payment of the balance of the premiums, nor was any reason given for the refusal to accept the health certificate and reinstate the policy.

In *Poles v. State Mutual Benefit Society,* 129 Pa. Sup. Ct. 297, 195 A. 429, there was a course of conduct covering such a period as might well have induced the assured to believe that the provisions of the insurance policy were waived. On numerous previous occasions, after default, the company had accepted overdue premiums and established a policy of waiver.

Neither of these cases, nor the others upon which the appellant relies, controls the present case. Prompt payment of premiums is essential to the business of a life insurance company as all the calculations are based on receiving premiums when due, otherwise it would be impossible to give as favorable rates as they do. If payments are not made, the company has the right to protect itself and its policy-holders by the enforcement of the provisions of contracts made with insured parties: *New York Life Ins. Co. v. Statham,* 93 U. S. 24.

The court below, in our judgment, had no alternative than to grant a non-suit which it properly refused to strike off.

Judgment is affirmed.