**BUSH v. PRUDENTIAL INS. CO. OF AMERICA.**

**No. 8555.**

Circuit Court of Appeals, Third Circuit.

Argued Oct. 16, 1944.

Decided July 6, 1945.

James J. Henry, of Philadelphia, Pa. (Raymond S. Shortlidge, of Philadelphia, Pa., on the brief), for appellant.

Kendall H. Shoyer, of Philadelphia, Pa. (Andrew C. Dana, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

■ Vasta D. Bush, the widow of Charles F. Bush, brought suit against the defendant, The Prudential Insurance Company of America, seeking to recover a sum asserted by her to be due from the defendant on a policy of insurance in the face amount of $3,000 issued by the defendant to her late husband. The jury rendered a verdict for Mrs. Bush in the amount sought by her but the court below entered judgment n.o.v.[1] for the defendant. The plaintiff appealed. The sole question presented is whether the policy was in force at the time of Bush's death. If a dividend due on the $5,000 policy may be applied pro tanto to the payment of the fourth quarterly premium due on the $3,000 policy and if the grace period of the $3,000 policy may be employed to extend the coverage, the policy sued on was in force at the time of Bush's death. In view of the fact that the jury found a verdict for the plaintiff all inferences to be drawn from the evidence must be those most favorable to the plaintiff. From the evidence the jury could have found the following.

Bush had been insured under a policy of term insurance in the face amount of $5,000 issued by the defendant. This policy contained a provision whereby within twelve years it might· be converted into other insurance than term insurance. In June, 1930, within the period stipulated by the policy, Bush reached the conclusion that he desired to convert the $5,000 term policy into a $3,000 insurance policy giving protection for life. The defendant's agent, one Dougherty, had informed Bush that if the $5,000 policy was not converted within a specified time unfavorable rates would render conversion unprofitable. On June 21, 1930 Bush surrendered the policy to Dougherty and received a receipt therefor. Nine days later Bush went with Dougherty to a doctor for a physical examination in order to qualify for the converted policy. The result of the examination being favorable to Bush, on returning home Bush paid Dougherty $5 as a down payment against the premium which would become due when the converted policy was issued. Dougherty gave Bush two receipts, one for the $5,000 policy and another for the $5. The receipt for the policy states: "Received of Charles F. Bush, policy No. 5497121 for $5,000 to be converted into a $3,000 policy, endowment at age 85. Policy No. 5497121 is paid to July 16, 1930. A. Dougherty, Agent." The receipt for $5, though repeatedly referred to by the witnesses, seems not to have been introduced in evidence. The Insurance Company received the $5 from Dougherty. Dougherty took the $5,000 policy in order to surrender it to the Company but did not do so. A dividend on the $5,000 policy in the amount of $18.80 was due to Bush from the Insurance Company. He directed Dougherty to apply this dividend against the first premium to become due on the $3,000 policy but upon Dougherty's representation that an application of the dividend would take some time, Bush paid the first entire quarterly premium of $32.82 due on the new policy with the understanding with Dougherty that the dividend due from the $5,000 policy would be applied as soon as possible against the premiums coming due on the $3,000 policy.

The $3,000 policy was issued to Bush. On July 14, on October 14, 1930, and on January 14, 1931 he paid the full quarterly premiums due on it. On the occasions when Bush made these payments he requested Dougherty to see that the dividend was credited as had been agreed. Dougherty stated repeatedly that this would be done, but the dividend in fact was never credited on the books of the defendant against premiums due or coming due on the $3,000 policy. Bush did not pay the quarterly premium due on the $3,000 policy on April 14, 1931 because he believed it was time that the Insurance Company should apply the dividend as Dougherty had agreed.

Shortly after April 14, 1931 a clerk from the defendant's local [Oxford, Pennsylvania] office called the Bush home on the telephone and talked to Mrs. Bush in regard to the unpaid premium. Mrs. Bush told the clerk of her husband's difficulty in securing the benefit of the unpaid dividend. On June 1, 1931, Pinno, an assistant superintendent of the defendant in charge of its local office, wrote a letter to Bush as follows: "I have been informed by my clerk

---

[1] See D.C., 52 F.Supp. 52.

that when she called you up to remind you of the overdue premium she was informed by Mrs. Bush that you were dissatisfied in some way or other regarding the methods employed by our representative, Mr. Dougherty. Mr. Dougherty operates out of the Oxford Office under my supervision, and I wish to assure you that we will appreciate any comments which you may have regarding the service rendered you and in the future will appreciate it if you will call matters of experiences such as you have had to the attention of this office. In the meantime, if there is anything at the present time upon which you wish to be enlightened, kindly make your wants known." Nothing was done in respect to the dividend and the April 14, 1931 premium was never paid by Bush. He died in an accident which took place on June 11, 1931.

Mrs. Bush first sued the Insurance Company in the United States District Court for the Eastern District of Pennsylvania seeking recovery on the $5,000 policy. The court gave judgment for the Insurance Company. Mrs. Bush had alleged that the $18.80 dividend should be applied to the $5,000 policy which thereby would have remained in force until Bush's death. The defendant contends that the issue presented by the instant case was adjudicated in the defendant's favor by the judgment in the prior suit.

■ Jurisdiction in the case at bar is based on diversity of citizenship. Bush was a resident of Pennsylvania. The policy was delivered there. Accordingly, the law to be applied is that of Pennsylvania. See Pierkowskie v. New York Life Ins. Co., 3 Cir., 147 F.2d 928, 932, and the authorities there cited.

■ As to the defense of res judicata asserted by the defendant in the instant case, since the judgment in the earlier litigation was concluded by a judgment in favor of the Insurance Company, Mrs. Bush having contended in that suit that the dividend due on the $5,000 policy should have been employed to extend the coverage on that policy to the date of her husband's death, it is obvious that the issue of the application of the unpaid dividend to the $3,000 policy was not adjudicated in the prior proceeding. See Nevling v. Commercial Credit Co., 156 Pa.Super. 31, 39 A.2d 266. We will now deal with the substantial issue presented by the case at bar.

■ The Insurance Company asserts that Mrs. Bush seeks to vary the terms of a written contract of insurance by parol evidence. It refers to the provisions of the $5,000 policy relating to dividends as follows: "Annually, during its continuance in force, the proportion of the divisible surplus accruing upon this Policy shall be ascertained and apportioned by the Board of Directors and credited to this Policy at the end of the policy year as a dividend. Such dividend shall be (1) paid in cash or (2) applied to the reduction of the premium then due, if any; * * * If the Insured shall select no other dividend option the dividend shall be paid in cash." The $5,000 policy granted an option to the insured to receive dividends in cash. From the evidence the jury could have concluded that Bush had elected to be paid in cash but even in the absence of any proof of an election by him, the defendant was obligated to pay the dividend to him in cash. Thus far the parol evidence rule clearly is not involved. But was the defendant under an obligation to apply the dividend of $18.80 due from the $5,000 policy to any unpaid premium due on the $3,000 policy? We think that it was for the reasons set out immediately hereinafter.

First: by an express provision of the $5,000 policy the defendant was obligated to pay the sum of $18.80 to Bush in cash. Bush was entitled to offset this sum due him from the defendant against any sum which might be due from him to the defendant. Bush possessed this right of set-off as a matter of law and the obligation of the Insurance Company to Bush in this connection was completely dehors the contract of insurance created by the issuance of the $3,000 policy and the application therefor. It follows that on April 14, 1931 when the fourth quarterly premium came due the amount owing from Bush to the defendant was reducible by the sum of $18.80.[2]

Second: the $5,000 policy contained a provision whereby the insured might convert it. Dougherty possessed authority to solicit such a conversion from Bush. He had the authority to give Bush a receipt for the $5,000 policy which was to be converted and to receive the $5 down-payment due against the first quarterly premium of the new or converted policy. The $3,000 policy was duly issued by the defendant. Bush paid three full quarterly premiums

---

[2] Without regard for any interest which may have accrued on the sum stated.

due on the $3,000 policy and the defendant received these payments and benefited by them for it credited the three payments against the $3,000 policy. It retained and continued to retain the dividend of $18.80 due on the $5,000 policy. It refused to apply that dividend to extend the coverage of the $5,000 policy to the date of Bush's death. Bush relied upon the statement made by Dougherty that the dividend due upon the $5,000 policy would be credited against premiums due on the $3,000 policy.

■ We conclude that under the circumstances of the instant case the defendant is estopped to deny that the sum of $18.80, the dividend, was not applicable against any sum due by way of premium on the $3,000 policy. The law of Pennsylvania to be applied in the case at bar is suggested by the recent decision of the Superior Court of Pennsylvania in Klopik v. Gen. Amer. Life Ins. Co., 155 Pa.Super. 659, 663, 664, 39 A.2d 281, 282, 283, as follows: "In Poles v. State Mutual Benefit Society, 129 Pa. Super. 297, 301, 195 A. 429, 431 * * * [it was] said: '* * * Where an insurance company adopts a course of conduct which induces an honest belief, reasonably founded, in the mind of the policyholder that strict compliance with stipulations for prompt payment of premiums will not be insisted upon and that payment may be delayed without incurring a forfeiture, the company will be deemed to have waived the right to claim an automatic forfeiture and it will by its conduct be estopped from enforcing the same. See 3 Couch Encyc. of Insurance Law § 681. "The doctrine that an insurer may waive its right to insist that the rights of the insured have been forfeited extends to practically every ground for denying liability. * * * It also applies * * * to a default in the payment of a premium, which may be waived after the premium has become due." 14 R.C.L. 1155, § 335. The company ought not to be permitted to take advantage of a default which it encouraged. Helme v. Philadelphia Life Insurance Co., 61 Pa. 107, 110, 100 Am.Dec. 621.' See McGine v. State Mutual Benefit Society, 135 Pa.Super. 35, 4 A.2d 537." We conclude therefore that the defendant was obligated to apply the unpaid dividend against the unpaid premium due on the $3,000 policy on April 14, 1931 and that the defendant is estopped to assert that the provisions of the $3,000 policy required Bush to pay the full sum of the premium, $32.82, to the

Insurance Company on April 14, 1931. He was obligated none the less to pay to the defendant the difference between the amount of the premium and the sum due from the defendant to him from the dividend.

■ At this point the plaintiff's case breaks down for the law of Pennsylvania is clearly to the effect that an insurance company is not required to accept a lesser sum than the amount of a premium due to it. Reynolds v. Equitable Life Assur. Soc., 142 Pa.Super. 65, 15 A.2d 464. Pennsylvania follows the weight of authority in this respect. See the notes in 92 A.L.R. 712 and 6 A.L.R. 1400, cited with approval by the Superior Court in the Reynolds case.

■ But even if the principle stated in the preceding paragraph was deemed to be inapplicable the plaintiff still faces insuperable obstacles to recovery. Under the theory which the plaintiff advances the unpaid dividend of $18.80 must be treated as if applied by the defendant in part payment of the initial premium due on the $3,000 policy and "that subsequently the defendant accepted three full quarterly premium payments, paying the premiums upon this policy down to June 5, 1931. * * *" The plaintiff then adds the 31 day grace period provided for in the $3,000 policy sued on. This would extend its coverage past the time of Bush's death.

The theory advanced is an ingenious one and we view it with sympathy. It is, however, unworkable. To accept it is to create a new state of operative facts for Bush and the Insurance Company for the evidence shows beyond doubt that Bush did not intend that the unpaid dividend should be treated as a partial payment of the first premium or that Dougherty represented to him that it would be so treated. The record shows that Bush made a down payment of $5 against the first premium coming due on the $3,000 policy and paid the balance due, $27.82, in cash. It shows that Bush intended that the dividend should be applied to the payment of premiums on the $3,000 policy as soon as possible and that he actually paid in full and by the due dates the second and third premiums of the $3,000 policy. There is therefore no basis for an estoppel which would compel the Insurance Company to treat the premium paid on January 14, 1931 as if it had in fact been paid on April 14, 1931, thus extending the coverage three months. Nor is the

plaintiff's position improved if we treat the sum due on the dividend as the equivalent of an extra premium in the sum of $18.80 paid on the $3,000 policy extending the coverage of the policy sued on, pro tanto to the amount of a full quarterly premium or to about June 5, 1931, plus the grace period. This was not the intention of either Bush or Dougherty as the evidence shows and no saving estoppel can be worked out on such a basis. Cf. Mackie v. Prudential Ins. Co., 148 Pa.Super. 498, 25 A.2d 736, Bush v. Hartford Fire Insurance Co., 222 Pa. 419, 71 A. 916 and Urian v. Scranton Life Insurance Co., 112 Pa.Super. 453, 171 A. 409.

█ Assuming arguendo, however, that by estoppels favorable to the plaintiff, a pro tanto application of the $18.80 could be effected which would extend the coverage of the policy to June 5, 1931 as the plaintiff asserts, the plaintiff's case must fail because the grace period of 31 days may not be added to extend the coverage of the policy to the date of Bush's death. The pertinent provisions of the policy are as follows: "Grace in Payment of Premiums. In the payment of any premium under this Policy, except the first, a grace of thirty-one days without interest will be allowed, during which time the Policy will remain in force. * * *" As the learned District Judge points out, the grace period runs from the times the premium payments, except the first, were due "under this Policy." In other words the grace period comes into effect from the time of a due date of a premium required by the policy. The amount of $18.80 due to Bush from the Insurance Company cannot be deemed to be such a premium. Conceding that an insurance company may waive a condition in a policy by parol even though there be an express stipulation to the contrary in the policy, Evans v. Metropolitan Life Ins. Co., 294 Pa. 406, 410, 144 A. 294, 296, and conceding also that Pennsylvania applies the principle of estoppel with liberality, Mackie v. Prudential Ins. Co., supra, there is no evidence in the case at bar upon which the jury could have based a finding that the grace provisions of the policy were waived or were rendered inoperative by any act of the Company or of its agent, Dougherty. These provisions therefore are binding upon the plaintiff as they were binding upon her husband. Cf. Kash v. Sun Life Assur. Co. of Canada, 140 Pa.Super. 478, 14 A.2d 214. It follows that the grace period be-

gan to run on April 14, 1931 and expired 31 days later, or 26 days prior to Bush's death.

The judgment of the court below is affirmed.