386 F.2d 600
 Elaine PANIZZI and Louis T. Gedeon, Jr., Administrators of the Estate of Louis T. Gedeon, Deceased, Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
Elaine PANIZZI and Louis T. Gedeon, Jr., Administrators of the Estate of Elaine Edith Gedeon, Deceased, Appellees,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.
 No. 16469.
 No. 16470.
 United States Court of Appeals Third Circuit.
 Argued October 3, 1967.
 Decided December 4, 1967.
 Rehearings Denied January 3, 1968.
 
 Paul A. Simmons, Tempest & Simmons, Monongahela, Pa., for Elaine Panizzi and Louis T. Gedeon, Jr., Administrators.
 Francis H. Patrono, Patrono, Ceisler & Edwards, Washington, Pa., for State Farm Mut. Auto. Ins. Co.
 Before STALEY, Chief Judge, and MARIS and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 These cases are before the court on the appeal of an insurer from a judgment for the insured in the face amount of an automobile liability insurance policy and the appeal of the insured from a judgment for the insurer in a companion case, claiming breach by the insurer of its fiduciary duties under the policy. The car of Louis T. Gedeon (Gedeon) left the highway and struck a guard rail on August 11, 1955; his wife died on that day as a result of the accident.
 
 
 2
 On January 5, 1956, Gedeon, as administrator of his wife's estate, sued himself under the Pennsylvania Wrongful Death Act in the state court.[1] He made no defense personally and a verdict for the estate awarded $51,318.92 on June 1, 1956. Judgment on this verdict was entered November 25, 1957. On February 10, 1958, Gedeon, individually, sued State Farm Mutual Automobile Insurance Company (State Farm) in assumpsit in the same court,[2] claiming damages of $51,318.92 for State Farm's breach of its covenant to defend found in an insurance policy issued by State Farm to Gedeon in 1955. The Court of Common Pleas of Washington County, Pennsylvania, en banc with a dissent, affirmed the finding of the trial judge that the defendant insurer was not liable on three grounds: (1) the insurance policy was not in force at the time of the accident because of failure to pay premiums; (2) even if the policy were in force, obligations to members of the insured's household were excluded from coverage; and (3) that even if there were a breach of the contractual duty to defend, Gedeon had shown no damages because he conducted his own defense by choosing not to contest the wrongful death action, and, hence, no counsel fees or other costs were thus incurred. On appeal to the Supreme Court of Pennsylvania, the decision was affirmed solely on the basis of the third argument. Gedeon v. State Farm Mutual Automobile Ins. Co., 410 Pa. 55, 188 A.2d 320 (1963).
 
 
 3
 After this decision, Gedeon filed two civil actions against State Farm in the United States District Court for the Western District of Pennsylvania. As administrator of his wife's estate, he sought $10,000. indemnity, the face amount of the insurance policy, in one cause of action, and in the other, suing individually, $51,318.92 as damages for State Farm's breach of its fiduciary duties under the policy.[3] The District Court denied State Farm's motion for summary judgment on the $10,000. indemnity claim, saying that the policy appeared to have been in force at the time of the accident and any controverted issues of fact that might be lurking would have to be determined by trial. Gedeon v. State Farm Mutual Automobile Insurance Co., 227 F.Supp. 342, 347 (W.D.Pa.1964). This same opinion granted summary judgment to the insurer, however, on the action claiming breach of fiduciary duties under the policy. We reversed this latter decision on February 26, 1965 (Gedeon v. State Farm Mutual Automobile Insurance Co., 3 Cir., 342 F.2d 15), and remanded to the District Court for trial. After trial on both causes of action,[4] the trial judge awarded Gedeon the $10,000. indemnity but found for State Farm on the issue of breach of fiduciary duty. Gedeon v. State Farm Mutual Automobile Insurance Co., 261 F.Supp. 122 (W.D.Pa.1966). In No. 16469, plaintiff Gedeon appeals from the denial of his claim for $51,318.92 for breach of fiduciary duties; in No. 16470 State Farm appeals the judgment for the $10,000. indemnity of the insurance policy.
 
 
 4
 We dispose of both appeals and this entire controversy because, on this record,[5] the conclusion is required, as a matter of law, that Gedeon was not insured by State Farm at the time of the accident. Accordingly, State Farm is not liable for any claimed indemnity, for any payments under the insurance contract, nor for the breach of any duties or obligations allegedly arising from the terms of that policy.[6]
 
 
 5
 The Court of Common Pleas of Washington County, Pennsylvania, decided on November 13, 1961, that Gedeon was not covered by the State Farm policy on August 11, 1955, when the accident occurred. This decision is not res judicata of this question. See 342 F.2d at 17-18 and 227 F.Supp. at 344-345. The litigation in Pennsylvania operates as an estoppel only on the issue of coverage as it relates to the breach of the duty to defend (342 F.2d 18). Other claims (including different fiduciary claims) are made in this litigation.
 
 
 6
 As clearly shown by the record in this case in all the courts where this controversy has been heard, Gedeon agreed to purchase automobile insurance for six months' coverage. He paid State Farm his $17.00 membership fee on May 18, 1955,[7] and rather than pay the premium of $52.00 then, was allowed to sign a "time check" for the $52.00, agreeing to pay the full premium "on demand, but not before July 18." Sometime prior to July 26 (and almost certainly prior to July 23),[8] Gedeon received a bill demanding payment of the $52.00 and showing that the due date was July 18. Gedeon made no payments on or before July 18 and consequently, on July 25, State Farm mailed him a notice of cancellation of the policy, effective August 7.[9] In addition to this cancellation, State Farm included an invitation to the insured to reinstate his policy and stated, "Reinstatement of your policy will be effective upon receipt of the required amount," namely, $52.00. The day after this mailing, Gedeon mailed $26.00 to State Farm with a letter stating that he was "sending Twenty-six dollars on my insurance policy" and "the balance" ($26.00) would be forwarded in twelve days (August 7). On August 7, Gedeon failed to pay the $26.00 balance, and the final payment was not mailed until August 12, the day after the accident.
 
 
 7
 After receipt of the full $52.00, State Farm's bookkeeping procedure, after digesting the above facts, computed that the policy was out of force as of August 7, according to the notice of cancellation, but was reinstated on August 12. Accordingly, on August 25 State Farm mailed to Gedeon a refund of $1.46 for the five days the premium was unearned, the policy not being in force from August 7 to August 12.
 
 
 8
 Although, as noted above, the State Court decision is not res judicata, we agree substantially with the Court of Common Pleas en banc decision (No. 420, Feb.Term 1958 — see fn. 2 above) that as a matter of law no contract was in force at the time of the accident. Although State Farm granted coverage in return for Gedeon's "time check," non-payment as of July 18 and demand gave it the right to cancel any coverage merely by giving the required five-day notice. The notice of July 25 should have been expected by Gedeon; he knew he was in default on his "time check."[10] As the notice stated, whatever contract or coverage was created on May 18 was terminated as of August 7. The fact that it could have been terminated as early as July 23 or 24 adds nothing to the case; we need not speculate on State Farm's possible business reasons for picking August 7. Testimony revealed that the internal bookkeeping of such large insurers often takes considerable time. State Farm had the power to refuse coverage until payment in full of the premium. See, e. g., Mackie v. Prudential Ins. Co. of America, 148 Pa. Super. 498, 500, 25 A.2d 736, 737 (1942); Bush v. Prudential Ins. Co. of America, 52 F.Supp. 52, 53 (E.D.Pa.1943) aff'd 150 F.2d 631, 634 (3rd Cir. 1945).[11]
 
 
 9
 State Farm, however, apparently still hoping for Gedeon's business, invited him to reinstate the policy by paying the required amount, the full $52.00. A policy of insurance is unilateral. The agreed exchange for the insurer's promise is the payment of the premium. The offer of reinstatement clearly stated that such reinstatement would be "effective upon receipt of the required amount," which did not occur until after the accident. Also, a liability policy such as this is an aleatory contract where the insurer promises to make payment on the occurrence of a fortuitous event while the policy is in effect. See Moyer v. Diehl, 139 Pa.Super. 59, 11 A.2d 651, 655 (1940); Restatement, Contracts, § 291. If Gedeon had paid before the August 7 termination date, no lapse in coverage would have occurred. But Gedeon did not accept by full payment until August 12. He was without coverage from August 7 through August 12. See Cooper v. Belt Auto. Indemnity Ass'n, 79 Pa. Super. 479 (1922), where, after the insured's failure to make timely payment was followed by an offer to reinstate, the company did not receive and credit the premium until July 22, the day after an auto accident, and the court said at pp. 481-482:
 
 
 10
 "Conceding that by acceptance of the deposit on July 22, 1920, the policy was restored to life as of that date, it does not follow that plaintiff was protected against a loss happening prior to that date but after July 10, 1920. The consequence of the default of the insured in not paying the deposit when due was that the policy thereupon ceased to bind the company and protect the insured, and this without any act or declaration on the part of the company: Lantz v. Vermont Life Insurance Company, 139 Pa. 546, 21 A. 80. The payment of the deposit was not made until after the loss, and the policyholder has no right to maintain this action without showing that the default in the payment of the deposit was either waived or excused by the company. Defendant does not allege an express waiver, and the only act which the company did prior to the loss, to which the insured points as evidence of waiver, is the letter sent to plaintiff the day before the accident, urging him to pay his overdue deposit and reinstate himself and stating: `If you have already forwarded this deposit, kindly disregard this notice.' This does not even tend to establish a waiver, but called upon the insured to reinstate himself by payment of the deposit which was due. It was express notice of the suspension of the policy and taken as strongly as possible against the company, was a promise to reinstate the insured under the policy at once when the deposit arrived. But the deposit was received after the loss, and the acceptance of it merely reinstated the policy as of the date of its receipt. * * *
 
 
 11
 "In the present case, there is not only an absence of any acts or declarations tending to induce a reasonable belief that the company had waived a forfeiture under the contract, but the acts and declarations were notice to plaintiff that the policy had lapsed and could be reinstated only when the overdue deposit was received by the company."
 
 
 12
 Gedeon makes two arguments against this analysis, both of which turn on the legal characterization given to his payment on July 26 of $26.00. His first contention is that the $26.00 was part payment of the premium due on the original State Farm offer to insure. Accordingly, he claims coverage for at least three months ending on August 18. And if the $1.46 refund is for unearned premiums as required to be refunded upon cancellation, this would give coverage at least through August 13. This argument is contrary to Pennsylvania law. An insurer cannot be forced to accept less than the premium due and grant coverage pro rata. Mackie v. Prudential Ins. Co. of America, supra, 25 A.2d at 737;[12] Bush v. Prudential Ins. Co. of America, supra; Miller v. Elk County Mut. Fire Ins. Co. P. of H., 323 Pa. 177, 179, 186 A. 76, 77 (1936).[13] Furthermore, nothing in the contract of insurance provides for partial payment with pro rata coverage.
 
 
 13
 Gedeon's second contention is that his payment on July 26, together with the promise to pay the balance on August 7, constituted a type of counter-offer. By keeping the $26.00 after receipt, State Farm allegedly accepted this counter-offer to renew the policy and the policy, as of that date (July 26), was in force for the period then paid for — to August 18. The dissenting judge in the decision by the Court of Common Pleas of Washington County, Pa. (footnote 2 above), adopted this reasoning and added, as the necessary last step, that having renewed the policy by keeping the half premium, State Farm could only cancel by giving the required five days' notice. Since Gedeon would only give State Farm reason to cancel if he failed to pay the balance by August 7, as per his counter-offer, the earliest cancellation of the "renewed policy" could only be on August 12, the day after the accident. In the trial below leading to this appeal, the District Court apparently agreed with this argument of the State nisi prius court dissent, 227 F. Supp. 342, 345-346.[14]
 
 
 14
 It is difficult to see how this second contention can be supported. To begin with, as a matter of contract law, Gedeon failed to perform his counter-offer by not paying in full on August 7. It makes no difference that a portion of Gedeon's consideration was part performance on July 26 by payment of $26.00. Restatement, Contracts, § 289 (1932). When he failed to make his promised payment on August 7, there was a material failure of performance,[15] Restatement, Contracts, §§ 273-274, and State Farm could treat any obligation it had as conditional, even if one assumes its retention of the $26.00 after July 26 was initially acceptance of a bilateral contract and was not expressly conditional. Cf. Restatement, Contracts, § 274 (1932).
 
 
 15
 Secondly, it is impossible to see how Gedeon, knowing he had failed to honor his "time check," knowing that State Farm insisted on payment in full, and knowing that the original contract was cancelled as of August 7, was "counter-offering" to renew this original contract with a major modification as to an essential term. This would be too much for a court to imply from these circumstances, there being insufficient language in the Gedeon letter[16] to form the basis for such a contract. Even assuming he was ignorant of the cancellation when he paid $26.00 on July 26, he certainly knew of the cancellation when he failed to perform on August 7 as he had promised.[17]
 
 
 16
 As State Farm pointed out in a letter dated October 11, 1965, it adopted the view that the $26.00 was partial payment for reinstatement, conditionally accepted, and to be effective when and if the balance of the premium was paid. It cancelled the policy as stated in the July 25 notice on August 7, when payment in full was not received. No term of the contract or evidence in this record requires State Farm to regard August 7 as beginning another five-day notice period. The first contract was cancelled by adequate notice under the terms of the policy.[18] For these reasons, the record requires the conclusion, as a matter of law, that Gedeon was not insured by State Farm at the time of the accident on August 11.
 
 
 17
 There is nothing in the record which supports an argument that State Farm's actions induced Gedeon to believe he was covered on August 11.[19] The fact that State Farm had to withdraw verification of coverage for Gedeon on a Pennsylvania "Financial Responsibility Certificate" is adequately explained by the testimony concerning the withdrawing letter of September 1.[20]
 
 
 18
 Because the policy was not in force at the time of the accident, any claimed breach of duties under that contract is without merit. No fiduciary duty, duty to settle, duty to investigate, etc., ever arose. For these reasons, the judgment in No. 16469 in favor of State Farm Mutual Automobile Insurance Company will be affirmed; and the judgment in No. 16470 in favor of the administrators of the estate of Mrs. Gedeon will be reversed, with directions to enter judgment for the defendant.
 
 
 
 Notes:
 
 
 [1]
 12 P.S. §§ 1601-1603. Gedeon, Adm. v. Gedeon, No. 234, Feb. Term 1956, Court of Common Pleas for Washington County, Pa. This is the usual procedure in Pennsylvania, Minkin v. Minkin, 336 Pa. 49, 7 A.2d 461 (1939)
 
 
 [2]
 Gedeon v. State Farm Mutual Automobile Insurance Company, No. 420, Feb. Term 1958, Court of Common Pleas of Washington County, Pa
 
 
 [3]
 Since the trial in Gedeon v. State Farm Mutual Automobile Insurance Co., supra (fn. 2), in January 1961, Louis T. Gedeon has died and Elaine Panizzi and Louis T. Gedeon, Jr. have been substituted both as administrators of his wife's estate and as his personal representatives
 
 
 [4]
 This trial to the court was on a stipulated record, including the transcript of the 1961 State Court trial referred to in footnotes 2 and 3, and without taking any testimony
 
 
 [5]
 The District Court made no specific findings of fact concerning the effectiveness of the policy at the time of the accident on August 11, 1955. For purposes of the motion for judgment on the pleadings decided in 1964, the trial judge concluded that the contract was in effect on 8/11/55 (227 F.Supp. 345-346) and this conclusion was not challenged on the first appeal (342 F.2d at 16-17). Although we therefore assumed, on the argument of the first appeal, that the policy was in force, in the present appeals this conclusion is sharply contested and we are now presented with a far more complete record concerning the policy's effectiveness (see footnote 4 above — the record before this court in No. 14923 did not include 230A-234A, 240A-242A, 248A-249A, 326A, 336A, 337A, 340A, 341A, 344A, and many other pages of the present record). We thus must decide the issue of the effectiveness of the contract for the first time, even though the District Court's findings and conclusions made after the trial contain the statement that (261 F.Supp. at 123):
 "We have reviewed all the points raised by the argument at the trial, but adhere to all that was decided in our former opinion * * *."
 The record on this appeal does not justify findings or conclusions which would support a holding under Pennsylvania law that the policy was in force on August 11, 1955.
 
 
 [6]
 The Supreme Court of Pennsylvania, while refusing to rule on whether the policy was in force, observed that all the plaintiff's claims would fail if the policy were not in force on the day of the accident. Gedeon v. State Farm Mutual Automobile Insurance Co., supra, at 58 and 321, note 2
 
 
 [7]
 All dates are 1955 unless otherwise noted
 
 
 [8]
 The copy of this bill in the Company's files had a handwritten notation on it: "Cancel — 7/22/55"
 
 
 [9]
 There was considerable controversy over whether or not Gedeon had received the notice of cancellation of July 25 before he mailed his part payment on July 26. Ample evidence exists to permit a finding that the notice was received prior to the mailing particularly in light of Gedeon's selection of August 7 as the date for his final payment. However, this question need not be decided
 
 
 [10]
 Despite the allegations in the brief for Gedeon, this is not a case of an insurance company adopting a course of conduct that misleads the potential insured. See pages 13 and 14 below
 
 
 [11]
 In theBush case, this court said 150 F.2d at p. 634: "* * * the law of Pennsylvania is clearly to the effect that an insurance company is not required to accept a lesser sum than the amount of premium due to it." In the Mackie case, the court used this language, 25 A.2d at p. 737:
 "* * * the acceptance by an insurance company of some, but less than all the premiums which are delinquent, will not of itself operate as a waiver of the company's right of forfeiture for lapse of premiums."
 
 
 [12]
 In this case the court said 25 A.2d at page 737: "* * * the acceptance by an insurance company of some, but less than all the premiums which are delinquent, will not of itself operate as a waiver of the company's right of forfeiture for lapse of premiums."
 
 
 [13]
 In this case, the court said:
 "* * * this court has uniformly held that where there is a default in payment of premiums or assessments, the protection of the policy is automatically suspended from the time of default to the subsequent revival * * *."
 
 
 [14]
 This is the relevant portion of Judge Dumbauld's first decision in this case, which he adhered to in his second decision, 261 F.Supp. at 123, the one now appealed
 
 
 [15]
 Nonpayment of the full premium is clearly material to insurance contracts, Restatement, Contracts, §§ 275, 276 (1932), both as a business matter in the insurance industry and as the State Farm forms and its course of dealing with Gedeon show
 
 
 [16]
 Page 339A of the Appendix contains Gedeon's letter, marked received on July 28, as follows:
 "Messrs, Because of an added expense on myself I am sending twenty-six dollars on my insurance policy and I shall forward the balance in twelve days From this date Thanking you very kindly.
 Yours truly, Louis T. Gedeon."
 
 
 [17]
 If we assume that Gedeon had received the State Farm notice in time, his "counter-offer" is an attempt to comply with the reinstatement invitation — one that was without effect until August 12. As noted above, decision of this case does not demand making this assumption
 
 
 [18]
 The expressed intent of parties controls in the formation of contracts. Throughout this transaction, State Farm insisted on payment of the premium in full. If there was any doubt, its notice of July 25 made this insistence quite clear. State Farm expressed no intent to grant pro rata coverage if the full $56.00 premium was not paid by August 7. The phrase in the letter of October 11, "insurance coverage to extend for the period afforded by the payment submitted," was never expressed until long after the cancellation on August 7 and reinstatement on August 12, and related to the conditional reinstatement if and when the balance of the premium was paid
 
 
 [19]
 Indeed, if Gedeon was having difficulty paying for his insurance and if he believed that his part-payment carried him through August 18, it is strange that he rushed to complete payment the day after the accident in which his wife had been killed and several days earlier than needed
 
 
 [20]
 Although State Farm took some action to cancel the policy as early as July 22, a written notation to that effect appearing on the retained copy of the "notice of payment due," the bookkeeping entries were not finished on the cancellation of August 7 and reinstatement of August 12 until August 25, when the $1.46 refund was sent for the days when the policy was out of force. The September 1 letter followed within a week. It is noted that Gedeon had the benefit of coverage until November 18, except for the period August 7 through August 11, the premium for which is represented by the refund of $1.46