## Pennsylvania National Mutual Casualty Insurance Company v. State Farm Fire and Casualty Company

*Raymond W. Dorian,* for plaintiff.
*Charles H. Saylor,* for defendant.

DOLBIN, *J.,* October 3, 1990—Plaintiff, Pennsylvania National Mutual Casualty Insurance Company, filed this action against State Farm Fire and Casualty Company seeking damages as a result of defendant's wrongful denial of coverage to its insured, Andrew Straka, thereby resulting in his being uninsured and rendering Pennsylvania National liable for benefits under an uninsured motorist coverage provision of policies issued by Pennsylvania National to the estate of the pedestrian who was struck and killed by Straka.

The case was tried non-jury and the following represents a fair distillation of the evidence at several consecutive hearings:

Straka, while driving his automobile on October 7, 1981, struck and injured one Dominic Snyder who died as a result of his injuries. State refused to provide liability coverages for Straka and refused to defend the action brought against him by the estate of Snyder whereupon the estate made a claim against Pennsylvania for the recovery of damages under an uninsured motorist coverage provided by Pennsylvania to the decedent and additional policies issued by Pennsylvania to his relatives. A Board of Arbitrators entered an award in favor of the estate and against Pennsylvania in the amount of $105,000 which Pennsylvania duly paid to the Snyder estate. Pennsylvania now seeks to recover that amount in addition to counsel fees, expenses and cost of suit in the amount of $7,854.39 in defending the Snyder claim.

It is the contention of Pennsylvania that State Farm wrongfully refused to defend the action brought against him by the estate of Snyder and it is State's contention that they had lawfully canceled a policy of insurance with Straka for non-payment of

the premium by Straka and that there was no policy coverage in effect at the time of the accident.

The evidence discloses that in March 1981, Straka applied for motor vehicle insurance with State through State's agent, Myron C. Marsch, and paid $90.80 to Marsch for which a binder for insurance coverage was issued. This was transmitted to State's office at which time the premium was calculated as $108.12 and the policy was mailed from State to Marsch together with a billing for the additional $17.32. A bill for $17.32 was sent in May 1981 and Straka was again reminded in June 1981 by a second notice of the premium which was due. On September 11, 1981, State sent to Straka a cancellation notice advising that if no payment was received by October 1, 1981, the policy would be canceled. Accordingly, on October 1, 1981, the policy was canceled. Unfortunately for Straka, the accident occurred on October 7, 1981. Subsequently on November 3, 1981, Straka remitted $17.32 to the company and the policy was re-instated. It was Straka's testimony that he thought he was covered and that he did send in an additional premium when requested by the company. He did not have the receipt for the money order nor did he recall when he sent the money order or how long after he received the notice that the money was sent. He could not recall that town post office where he got the money order nor could he recall if the post office retained a copy of the same or where the money order was mailed. No letter was returned to Straka. The operations supervisor of State testified as to the notices sent to Straka by their computer and testified that they checked their mail room and other State Farm companies but did not receive any monies for the premium balance due on the Straka policy. This representative concluded that the pol-

icy was out of force from October 1, 1981 until November 3, 1981.

An officer manager for State who incidentally was the daughter of Mr. Marsch, deceased, testified that she was in charge of the Marsch office when Straka applied for the policy and that she sent a bill to him for $17.32. She testified that when she inquired of Straka why he did not report the accident until sometime in December 1981, he replied, "Because I felt that I did not have coverage."

The credible evidence of record weighs heavily in favor of the contention advanced by defendant. It is beyond doubt that State properly denied coverage inasmuch as they did not receive the balance due on the policy in spite of the several notices to the insured (Straka) that the policy would be canceled unless the balance of the premium was received.

The knowing non-payment of a premium due by an insured in itself effectuates the cancellation of an insurance policy. The receipt by an insured of premium notices, and the subsequent failure to pay such premium, constitutes a knowing non-payment justifying cancellation of the policy without further notice to the insured. *Federal Kemper Insurance Company v. Commonwealth Insurance Department,* 509 Pa. 1, 500 A.2d 796 (1985). The policy, having been issued, did not preclude State from later terminating the policy in the event the entire premium was not fully paid in a timely manner. *Panizzi v. State Farm Mutual Automobile Insurance Company,* 386 F.2d 600 (3d Circuit 1967). The evidence submitted by plaintiff's witness, Andrew Straka, is less than reliable, being vague and uncertain as to time and place of the alleged payment. Plaintiff has failed to prove its case by a fair preponderance of the evidence.

Accordingly, we enter the following

## DECISION

And now, October 3, 1990, following a trial without jury and after a fair consideration of the evidence, the court finds in favor of defendant.